**GULF PIPE LINE CO. v. HURST.**    (No. 6556.)

(Court of Civil Appeals of Texas. San Antonio. April 30, 1921. Rehearing Denied May 26, 1921.)

**1. Appeal and Error ⬅1053(2)—Erroneous admission of evidence not cured by instruction to disregard.**

Erroneous admission, over objection, of evidence of damage to unbaled hay, in an action for injury to baled hay only, was not rendered harmless by subsequent charge not to consider such evidence; the verdict having been for more than the amount of the damages to the baled hay, as testified to by plaintiff.

**2. Trial ⬅350(3)—Issue as to minimizing damages raised by pleading and evidence should be submitted.**

The issue of minimizing damages having been raised by the pleading and evidence, the court should, on request, have submitted whether plaintiff could have saved part of the hay which was destroyed, and not merely whether he could have saved all of it.

**3. Trial ⬅260(1) — Requested instructions covered by others given, properly refused.**

Requested instructions substantially covered by instructions given need not be given.

**4. Damages ⬅110—Measure for permanent injury to land stated.**

The difference between market value of land immediately before and after injury to it is the measure of damages for permanent injury.

**5. Trial ⬅215, 350(3)—On conflicting evidence as to nature of injury, issue should be submitted, with instructions as to different measures of damage.**

The evidence in action for injury to land being conflicting as to whether the injury, if any, was permanent or temporary, an issue should have been submitted as to what was its nature, with an instruction as to the difference in the measure of damages in the two cases.

**6. Damages ⬅109—Measure for temporary injury to land stated.**

The measure of damages for temporary injury to land is the cost of restoring it to its prior condition and the value of its use while in its injured state.

**7. Trial ⬅202, 255(1)—Duty of court and parties as to submitting issues stated.**

It is the duty of the court in the first instance to submit all the issues raised by the pleadings and evidence, and on its failure so to do it is then the duty of the complaining party to present the matter to it and request proper instructions, which, if material, it must give or submit in some form to give the party the benefit thereof.

Appeal from Tarrant County Court; W. P. Walker, Judge.

Action by N. B. Hurst against the Gulf Pipe Line Company. Judgment for plaintiff, and defendant appeals. Reversed, and remanded for new trial.

David Proctor and Frederick E. Greer, both of Fort Worth, for appellant.
C. A. Wright, of Fort Worth, for appellee.

COBBS, J. Suit was brought by appellee to recover of appellant $900, with 6 per cent. interest from September 6, 1919, damages, caused by rain and overflow of water, to his baled hay and to his land, caused in laying an eight-inch pipe line through his hay meadow, constructed in such a way that Sparger, the agent of appellant, was unable to haul the hay out of the field and to his barn before the rain came and destroyed the hay, because the pipe line lay above the ground between the hay and the barn over which it was required to cross to the barn. In lay-

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ing the pipe line, appellant cut a levee running along the west boundary line of his field, in consequence of which act water came through and injured appellee's hay and land.

The appellant filed general and special defenses, general denial, and specially pleaded that it was the duty of appellee to mitigate the damages by the exercise of ordinary care, but that he made no effort to do so.

The trial was had before a jury, upon special issues, and upon the return of their answers the court rendered judgment for $920.

[1] The first assignment is the court erred in permitting evidence to go to the jury in regard to damages caused to unbaled hay, in that there was no pleading to support it, and was calculated to and did arouse prejudice in the minds of the jury against him, which, by their verdict, it is apparent, disregarded the court's instruction not to consider such evidence and gave a verdict, notwithstanding the disputed evidence, for all that was asked for in the petition, which included damages for unbaled hay and more interest than was sued for.

The bill of exception complained of the action of the court in permitting witness to testify as to the unbaled hay in the field, estimated by him at about 1000 loose bales and about three or four acres that had not been cut. The witness further stated:

"It ruined every bit of it [the other hay]. Some drift washed up into it and the water got all over it—got high enough to wet it all the way through."

The appellant objected to this testimony on the ground of its immateriality and harmful nature. The court overruled the objection at the time and permitted the witness to testify. Appellee contends it was rendered harmless, because afterwards, at appellant's request, the court instructed the jury not to "consider for any purpose any testimony that you may have heard in this case regarding any injury to the hay in said field which was not baled at the time the defendant connected its said pipe line through said field."

The court approved the bill, qualified by saying the requested charge as above was given. It is shown in the face of the bill that appellant made the objection in the presence of the jury, and the court said, "I overrule the objection," and the witness was permitted to continue with his testimony in respect to the unbaled hay, not an issue.

There was no proof of the market value of the hay attempted. Appellee himself stated that the value of the hay was 50 cents per bale, and that he was offered that for it. Mr. Sparger, the agent of appellee, and the man engaged to haul it, said he hauled it; got 300 bales out; left 100 in the field. He said some of the bales the cattle would eat;

said if appellee had got the hay out after the rain it might be worth something, but does not know what it would be worth—"just bad damaged hay." Appellee sued for and claimed injury to 741 bales already baled, and his own estimate for the injury was $370.50. The jury awarded him $532.80 with 6 per cent. interest from September 1, 1919, as damages for the injury to the baled hay. He was given about six days more interest than appellee sued for.

Sparger testified he sold some of this very hay in the field at $15 per ton and averaged 60 or 75 pounds per bale and actually sold some at 56 cents per bale. The jury awarded 72 cents per bale, which is about 16 cents per bale more than Sparger sold some of it for, 22 cents per bale more than the value fixed on it by appellee himself. This, of course, is figuring upon the assumption that the jury believed and found it entirely worthless, which is contrary to the evidence that showed it had some value as feed. The jury answered in reply to the court's special issue No. 8 that there were 740 bales of hay stacked up in the field injured or destroyed by the water. Then, in answer to the question, "What was the difference in the market value in the field of said baled hay, if any, immediately prior to the rain and immediately after the overflow, if any, and rain?" they answered, "532.80 with 6 per cent. interest from September 1, 1919." There was no proof of any market value shown. We fail to find in the charge any place where the court instructed the jury to find interest in any sum or for any amount. That is, of course, harmless and could be corrected. But we are now looking at their verdict to determine the question raised by the assignment as to whether the admission of the testimony improperly influenced them in arriving at their verdict. There can be no doubt that lawyers often ask questions that should not be asked, to get before the jury matters that are well known, to all lawyers learned in the law, to be improper and upon objection are withdrawn. But, when such is the obvious purpose, the court should not wait for an objection to be made, but timely stop such course of conduct. No experienced lawyer but has felt himself handicapped by such methods, and hestitate to make too frequent objections one after the other lest the jury become prejudiced by so many objections, thinking there is something attempted to be concealed from them.

Here the appellee was seeking to introduce evidence to show there was approximately about 1000 bales of loose hay in the field on the ground in windrows, all ruined, in addition to the baled hay sued for, for which he was not being compensated.

The test in such cases is whether or not this irrelevant testimony was such as to in-

fluence the minds of the jury to such an extent that a subsequent charge to them before retiring to consider the case would remove the impression that had already been impressed upon their minds. Such testimony tended to confuse the minds of the jury and perhaps incline them towards the highest amount of damages proved in making up their verdict. Tucker v. Hamlin, 60 Tex. 174. Mr. Justice Stayton said in Railway v. Levy, 59 Tex. 552, 46 Am. Rep. 269:

"The practice of admitting improper evidence, * * * subsequently directing the jury not to consider it, * * * is not to be encouraged; for * * * such directions or instructions will usually be found impotent to efface impressions once made."

While it is important, so far as it lies in the power of the courts to do, consistent with the administration of justice and the merits of the case, to affirm judgments putting the burden upon the loser to show errors that require a reversal, courts will not overlook evidence erroneously submitted, so impressive that a question is raised as to whether its effects can be removed from the minds of the jury by its subsequent withdrawal by counsel or an instruction from the court to disregard it.

Appellant has cited authorities to sustain this assignment, and there are many others to the same effect not necessary to mention. We sustain this assignment.

[2] The second assignment contends the court erred in not giving special charges requested to the effect that the jury be instructed whether or not plaintiff, or his agent, Sparger, could have lessened or mitigated his damages by the exercise of ordinary care and could have saved all or a part of his damages. The pleadings and evidence having raised the question as to whether or not the plaintiff or his agent could have saved a part of the hay by the exercise of ordinary care, the court, having submitted the issue only as to the whole of the baled hay, should have gone further and submitted the charge requested, or given one covering the point.

Special issue No. 9 submitted, "Could the plaintiff's agent, Sparger, in the exercise of ordinary care and diligence, have removed plaintiff's baled hay from the hay field and had the same placed in plaintiff's barn prior to the rain?" and in the eleventh, "have constructed a roadway over and across the pipe line, and thereby put the baled hay in the barn," and in the thirteenth, "have gone a route to the east or to the west of plaintiff's hayfield, and thereby removed plaintiff's baled hay into the plaintiff's barn before the rain." These are the only issues the court allowed as to the hay. The special issues refused, Nos. 4, 5, and 6, were submitting to the jury whether or not by the reasonable expenditure of money or labor, or both, the plaintiff could have prevented or lessened the damages, and extent thereof, but did not submit, as the assignment complains, could have lessened in part. They were sufficient to require of the court a more explicit instruction. The issue submitted to them was as to the removal of all the hay, and nowhere submits the issue as to whether by ordinary care and the expenditure of labor and money plaintiff would have lessened the damages in whole or in part. In other words, under these instructions, the jury were not permitted to find that one or a dozen or more bales might have been saved by the method the appellant was trying to present, and were nowhere given the opportunity to find that any part of the damages could be lessened. They had to pass upon the question as to saying all the baled hay, under this charge, or none at all, not a part. There was sufficient evidence introduced to raise that issue. It was made an issue by the pleading.

Generally it is the duty of every one suffering a tort or injury from the wrongful act of another to use all ordinary care and means to minimize the injury, even though it requires labor and the expenditure of money to do so, and when pleadings raise such issue, and there is some material evidence in its support, it is the duty of the court to submit it. The jury might have found a few or many bales could have thus been saved, and yet could not find all could have been saved. We sustain this assignment.

[3] We overrule the third assignment of error complaining of the refusal of the court to give his special charge No. 2 that when "personal property is damaged, but not destroyed, the measure of damages is the difference between its value before and after the injury" because it is substantially covered by the court's charge No. 8b.

[4, 5] The fourth assignment complains of the charge of the court contained in special issue No. 3, to the effect that, "if they found any difference in value at all, caused by the flooding through the ditch, you will make your estimation by taking the difference between the market value of the land immediately prior to the flooding and immediately after the flooding," for the alleged reason the jury were only instructed as to the measure of damages for permanent injury to the land, and not instructed for temporary injury, and erred in refusing to submit the special issues Nos. 7, 8, and 9 to permit the jury to ascertain whether or not the damages, if any, caused to plaintiff's land were permanent or temporary, so as to instruct the jury as to both temporary and permanent injury to the land.

The allegation in appellee's pleading as to the injury to the land, though rather general,

does not allege a permanent injury. As to the nature of the injury, the proof is rather conflicting; still it is sufficient to show temporary injury. As to the destruction of the hay and the stubble, there does not seem to be any conflict, but as to the permanency of the injury the evidence is conflicting.

There was testimony that there was no damage to the land; that the "draw" mentioned was a natural one, without defined banks. There was stubble in the bottom of the "draw," and the only bare place he saw on the entire property was a place close to the levee covering less than one-tenth of an acre where some filling had been done, and none of the soil had been washed out of the field. The witnesses, including appellee, seem to agree that it was low wet land subject to overflow and washes prior to building the levee. Through cultivation it had become more level and the effects of the overflows had in the main disappeared, and we may assume from the testimony that the effects of this overflow will disappear, as it is admitted the cause has been removed, and will again be as good for the purposes as before. We think the objection of appellant to the action of the court in submitting the third issue without instructing as to temporary, as well as permanent injury, when requested to do so, in view of the pleadings and evidence on the subject, is well taken. Trinity & Sabine Ry. Co. v. Schofield, 72 Tex. 496, 10 S. W. 575; M., K. & T. Ry. Co. v. Anderson, 194 S. W. 662; H. & T. C. Ry. Co. v. Wright, 195 S. W. 605; Railway v. Tait, 63 Tex. 223; Railway v. Helsley, 62 Tex. 593; Railway v. Joachimi, 58 Tex. 456. We sustain this assignment.

[6] The law seems well settled that in cases of temporary injury to land recovery may be had only for such damages as have accrued up to the trial, and is not the difference between the market value of the land immediately before and immediately after the injury, for that would allow a recovery for prospective damages; but the cost of restoring the land to its condition immediately preceding the injury and the value of the use of the land while in its injured condition is the proper measure.

[7] It is the duty of the court in the first instance to submit all the issues raised by the pleadings upon which there is material testimony. Upon the failure of the court so to do, it is then the duty of the complaining litigant to present the matter to the court and request proper instruction, which, if material, the court must give or submit in some other form, to give such litigant the benefit thereof.

For the errors committed in the trial of this case, above discussed, the judgment of the court is reversed, and the cause remanded to the county court for a new trial.