**FORT WORTH & DENVER CITY RY. CO.**
**v. MUNCY.**

No. 3366.

Court of Civil Appeals of Texas. Amarillo.

March 5, 1930.

Rehearing Denied April 2, 1930.

Turner, Culton & Gibson, of Amarillo, and Thompson & Barwise and F. B. Walker, all of Fort Worth, for appellant.

Works & Bassett, of Amarillo, for appellee.

JACKSON, J.

This suit was instituted in the district court of Oldham county, Tex., by the plaintiff, C. M. Muncy, against the Fort Worth & Denver City Railway Company, to recover damages alleged to have been sustained by the plaintiff on account of the negligence of the defendant.

The plaintiff alleges:

That he, together with his family, resides on a stock farm which he owns, situated on 680 acres of land adjacent to and north of the defendant's right of way in Oldham county, Tex., which the defendant maintains, and over which it operates its line of railroad.

That the plaintiff's land lies between the defendant's right of way and the Canadian river. That his land is practically level, but has a gradual slope north toward the river. That his dwelling is about 300 to 400 yards north of the right of way and some 200 yards west of a draw that crosses said right of way under a railroad bridge which constitutes a part of the defendant's track.

That prior to the year 1927 said draw naturally and normally accumulated and held water which afforded and furnished an ample supply of good and wholesome water for plaintiff's live stock, about 150 head of cattle, work stock, hogs, etc., and also furnished ample water for irrigating certain parts of said farm. That a large part of the plaintiff's land is suitable only for stock raising, but a portion thereof is valuable valley farming land, and 12 acres thereof along the sides of said draw are situated so that it can be irrigated for farming purposes from the water which is accumulated and held in said draw. That the water supply so accumulated in said draw was continuous and permanent and would have remained permanent, but for the acts and conduct of the defendant in the negligent construction and maintenance of its railroad bed. That the general and gradual slope of plaintiff's land toward the river on the north and the natural flow of the water before the construction of the railroad and roadbed by the defendant was such that the water spread out and flowed slowly toward the north across plaintiff's farm without ac-

cumulating or remaining in any place except in said draw and without any material damage to plaintiff's farm. That the defendant has constructed a permanent fill or dump from three to six feet in height along its right of way, which makes a permanent dam that holds the water on the south side of the railroad dump and concentrates the passage thereof under the railroad bridge which spans said draw, and thereby greatly increases the volume and force of the flow of the water down said draw and over plaintiff's land.

That, in addition to so constructing and maintaining its roadbed and track, during the early months of 1927 the defendant negligently threw and unloaded into the draw under the bridge and along its right of way a large amount of metal, wire, empty tin cans, waste timbers, and construction trimmings and trash, which, by the accumulation of the water and the concentration and force of the flow thereof under said bridge, were washed into and along said draw and over and upon plaintiff's land. That by reason thereof a much greater amount of water was forced out of said drainway and over plaintiff's farm than would have been caused by the natural and normal flow of the water. That during the year 1927 and at frequent and various dates since the defendant threw into said draw and along said dump and right of way a large amount of rocks, concrete blocks, timbers, and other heavy articles which were and have been by the accumulation, concentration, and force of the flow of the water passing under the bridge, washed into said draw on plaintiff's land and the part of said draw that accumulated and held water on plaintiff's land has been filled up and said rock, concrete blocks, and timbers and other heavy material are so embedded and settled in said drainway, and the dirt and soil so accumulated therein, that the current and flow of the water will not carry off such rocks, concrete blocks, etc., nor the dirt and soil which has washed into said draw. That so filling said draw has excluded the water therefrom, and thereby deprived plaintiff of his supply of water for his stock and for irrigation purposes.

That by filling said draw and the destruction of plaintiff's supply of water, his property has been and will continue to be greatly injured and damaged. That, as a proximate result of the negligent acts of the defendant, plaintiff's land has been permanently damaged in the sum of $3,000, the difference between the reasonable market value of plaintiff's land immediately before and immediately after said draw was filled up by the negligent acts of the defendant.

The defendant answered by general demurrer and general denial, and pleaded especially: That immediately south of its railroad bridge the soil is a loose, alluvial deposit with sand that easily dissolves, caves, and is washed with great force down said draw and deposited along the same, and the defendant, in placing rock and other material along its embankment and roadbed, did so in an effort to prevent the washing away of its roadbed, and that such rocks and other material tended to prevent the washing of earth into the draw on plaintiff's land north of said bridge, and were beneficial rather than harmful to the plaintiff. That, while plaintiff's land had not been damaged by the acts alleged, on account of complaints made by the plaintiff, the defendant had, in May, 1928, removed from plaintiff's land all objects of which complaint was made. That thereafter, on additional complaints, the defendant, in order to satisfy plaintiff, regardless of whether any of the materials had been deposited on plaintiff's land as a result of any act of the defendant, had said premises again searched and all objects of metal, stone, or other material of which complaint was made, gathered and removed from plaintiff's premises. That the defendant is not guilty of the wrongful acts charged against it by plaintiff, but that such acts done by defendant were necessary in order to protect its own premises, and that the defendant has done all in its power to prevent injury to plaintiff, and he has not been damaged and is not entitled to recover anything herein.

The defendant also alleged the two-year statute of limitations as a defense.

By supplemental petition, the plaintiff replied to defendant's answer by general demurrer, general denial, and alleged facts on which he relied to defeat defendant's plea of limitation.

In response to special issues submitted by the court, the jury found, in effect: That the defendant placed upon its right of way near the draw that runs under its railroad bridge, rocks, concrete blocks, timbers, and other heavy material. That said rocks, concrete blocks, and timbers and other heavy material were washed down said draw upon the plaintiff's land. That the defendant did not exercise ordinary care in placing said rocks, concrete blocks, and timbers and other heavy material upon its right of way near the draw that runs under its bridge. That the plaintiff's land was damaged by said rocks, concrete blocks, and timbers and other heavy material being washed into the draw upon plaintiff's land. That the placing of such rocks, etc., by the defendant at and near the draw where it runs under its railroad bridge was the proximate cause of plaintiff's damage. That the plaintiff's land was damaged in the sum of $3,000, and was not barred by two-year limitation.

The court instructed the jury that the measure of damages would be the difference, if any, between the reasonable cash value of plaintiff's land immediately before and immediately after the washing of said rocks,

concrete blocks, timbers, and other heavy material, if any, upon the plaintiff's land.

On the request of the defendant, the court instructed the jury not to consider the deposit of any rubbish, rocks, wire, cans, or other material that had washed on to plaintiff's land outside of the draw, and that, if plaintiff had been damaged by any act of the defendant, they should not consider any deposit on said land outside of the draw, as contributing to such damages.

On the findings of the jury, the court rendered judgment in favor of the plaintiff for the sum of $3,000, with 6 per cent. interest from the date of the judgment until paid, and costs of suit, from which judgment this appeal is prosecuted.

Appellant assigns as error the action of the court in submitting to the jury for determination the amount of damages sustained by appellee on account of any permanent injury caused to his land by any negligent act of appellant, since the evidence fails to show that the material washed into the draw resulted in permanently injuring the land and also fails to show what damage, if any, appellee suffered by the temporary loss or impairment of the use of his land by the washing of material thereon.

The testimony pertaining to the objects, such as wire, tin cans, metal, pieces of concrete, and old timbers that were washed down the draw and out of the draw and deposited on the plaintiff's farming land, and the removal or attempted removal thereof by the appellant, is somewhat voluminous and conflicting, but we deem a statement or discussion of such testimony unnecessary, as under the testimony all such material deposited on plaintiff's farming land would have constituted at most but a temporary nuisance, and was abatable, and the court instructed the jury, at appellant's request, not to consider the deposit of any rubbish, rocks, wire, cans, or material that had washed onto plaintiff's land outside of the draw, and, if the plaintiff had been damaged by any act of the defendant, they should not consider any such deposit on the land outside of the draw as contributing to such damages.

The testimony discloses that the drain or draw referred to in the pleadings is what is known in that locality as Cottonwood creek, and in our discussion we will so designate it.

The record discloses:

That as early as 1897 water accumulated, and was held in Cottonwood creek on what is now plaintiff's land, a short distance north of defendant's present right of way. That the water so accumulated was practically the only surface water available in that vicinity for watering cattle, and that such water was used by the L. S. ranch for that purpose. That during the years the creek bed was deepened and a greater amount of water retained in the creek, which formed what may be termed a natural reservoir. That appellee purchased the land in 1922 and moved on it with his family in 1925. That, at the time he moved on the land, the creek was free and clear of obstructions, and the water accumulated in a hole or reservoir in the creek 50 feet wide at one end and 60 feet at the other and about 250 yards in length. That the water for that distance was 6 to 8 feet deep. That the creek retained water for a distance of 600 yards on appellee's land, but after a distance of about 250 yards the depth of the water gradually decreased. That this furnished, in normal times, a permanent and sufficient supply of water for the number of cattle, about 125 head, that plaintiff ordinarily kept on his premises, and water for his milk cows, work stock, hogs, etc. That, in addition to such use, the creek furnished water for irrigating several acres of land on either side of the creek which was adapted to truck farming. That there was no other surface water on appellee's land and none available to him for use for his stock or irrigating purposes, and that he had been unable to secure well water on his property, after having put down eight different wells in an effort to procure water. That the channel and banks of Cottonwood creek, some 600 or 700 yards north of the railway track on plaintiff's land, practically disappeared, and the water passed on over plaintiff's land to the river through a depression without any defined channel or banks. That the railroad had constructed a dump several feet high on each side of the bridge spanning the creek. That the channel and banks of the creek south of the railroad were shallow, and during rains the dump caused the water to accumulate on the south side of the railroad, and its only escape was under the railroad bridge. That, by reason thereof, the water passed under the bridge and down Cottonwood creek very rapidly and with great force.

That, in order to protect its dump and bridge, some time about the first of the year 1927 the appellant placed a carload of old pieces of metal, iron pickings, wire, tin cans, etc., on the south side of its dump and at the ends of its bridge. That in April, 1928, the railroad company unloaded on the south side of its dump, and at each end of the bridge and into the creek, five carloads of rocks and concrete blocks, varying in size from small stones to 3 feet square, the larger ones weighing 400 or 500 pounds. That from time to time the appellant company had unloaded rocks and material along the south side of its dump and the abutments of its bridge for the protection of its property. That a great amount of these materials, wire, metals, tin cans, rocks, timbers, and concrete blocks, was washed by the force of the water down the

494

creek, and said material, together with mud, sand, silt, and soil and cinders practically filled the channel of the creek and the natural reservoir therein on plaintiff's land. That this accumulation of rock, cement, sand, silt, cinders, etc., was 5 feet deep in the bed of the creek, and practically destroyed the natural reservoir in the creek that had theretofore furnished plaintiff with a supply of water which was sufficient for his cattle and stock and for the purpose of irrigating about 12 acres of land. That, at the date of the trial, the water ranged in depth in this reservoir from 6 to 20 inches, with quite a few of the larger rocks showing above the surface of the water. That rocks, both large and small, were embedded in this muck of sand, cinders, silt, and soil, which had been deposited in the bed of the creek by the flow of the water. The greatest depth shown by the testimony, at any time since this material was washed down into and filled in the bed of the creek, was 30 inches. That the water retained in the reservoir after the bed of the creek had been filled in with said material was insufficient to furnish appellee water for his purposes. That the flow of the water which would in the future run down the creek would not remove the obstruction therefrom.

In our opinion this testimony was sufficient to authorize the court to apply the measure of damages a litigant is entitled to recover for permanent injury to his land, provided the court was authorized, under the testimony, to award damages for permanent injuries without submitting to the jury whether such damages were permanent or temporary.

The appellant assigns as error the action of the court in rendering judgment against it for damages for permanent injury to the land because the pleadings and the evidence raises the issue as to whether such injury was temporary or permanent, and the court was not authorized to render a judgment for permanent injury without having the jury determine whether such injuries were temporary or permanent.

Appellant contends that the evidence as to the width and length and depth of the natural reservoir in the creek which accumulated and held appellee's water supply; that such reservoir has been filled in with rocks, concrete blocks, wire, tin cans, timbers, sand, soil, silt, etc., to a depth of about 5 feet for a distance of about 250 yards and has been filled in to a lesser depth for a distance of some 600 yards; that the reservoir is not completely filled up, but still holds some water a part of the time —is sufficient to raise the issue of a temporary injury and a nuisance that is abatable.

There is no testimony as to the amount of labor, the cost, the difficulty, or the time it would require to remove this material from the creek bed, or that, if removed, the natural reservoir could be restored to its original condition and furnish appellee a sufficient water supply for his purposes.

"If a private nuisance is of such a character that its continuance is necessarily an injury, and it is of a permanent character (that will continue without change from any cause but human labor), and dependent for change on no contingency of which the law can take notice, then the damages are original, and according to the weight of authority a right of action at once exists to recover the entire damage, past and future, and one recovery will be a bar to any subsequent action." 20 R. C. L. p. 465.

The appellee's right to recover for permanent injuries to his land depends entirely on whether or not the nuisance of which he complains is susceptible of abatement.

"If it was what is called a permanent nuisance, one not abatable by any of the means known to law, or had inflicted a permanent injury, then the damages which the petition alleges are recoverable. It is only when the injury to the realty is permanent, or the nuisance complained of is, from its nature, permanent, that the damages are to be measured by the depreciation in the market value of the realty affected. * * * An abatable nuisance may be regarded as one which is practically susceptible of being suppressed, or extinguished, or rendered harmless, and whose continued existence is not authorized under the law." Sanders v. Miller, 52 Tex. Civ. App. 372, 113 S. W. 996, 999.

"If it results from a cause which is either permanent in its character or which is treated as permanent by the parties, it is proper that the entire damage should be assessed with reference to the past and probable future injury. * * * The controlling rule in actions for injuries resulting from similar nuisances would seem to be to adopt in each case that measure of damages which is calculated to ascertain in the most certain and satisfactory manner the compensation to which the plaintiff is entitled. When the injury is liable to occur only at long intervals, or when the nuisance is likely to be removed by any agency, the damages which have occurred only up to the time of the action will be allowed; but if the nuisance is permanent, and the injury constantly and regularly recurs, then the whole damage may be recovered at once. In a case like this the resulting depreciation in the value of the property is the safest measure of compensation. * * * The defendants seem to have treated the work as permanent, since they have failed upon application, to make a culvert for the passage of the water; and we are of the opinion the depreciation in the value of plaintiff's property is the most certain measure of his damages for the injury." Rosenthal v. T., B. & H. Ry. Co., 79 Tex. 325, 15 S. W. 268, 269.

"When a nuisance is created by the construction of works in their nature permanent, and which, as sometimes occurs in case of works for a public use, are not subject to be abated, the rule is that all damages resulting therefrom to property may be recovered in one action, and the proper measure of damages is the depreciation in the value of the property." Baugh v. T. & N. O. Ry. Co., 80 Tex. 56, 15 S. W. 587.

"The terminal yards, as admittedly shown, are permanent, and are intended, in their very nature, to be permanently used and operated without change of manner of use. Although ·the nuisance complained of is from an artificial agency, yet there is evidence to show that the discharge is not reasonably likely to be removed by any agency. As appears, practical agencies have been 'constructed and maintained to lessen and prevent overflow and drainage of such substances into the creek, but, notwithstanding such reasonable precaution, overflow and drainage to some extent occur." M.-K.-T. Ry. Co. of Texas v. Williams (Tex. Civ. App.) 5 S.W.(2d) 575, 577.

See, also, City of Paris v. Allred, 17 Tex. Civ. App. 125, 43 S. W. 62; St. L. S. W. Ry. Co. of Texas v. Wilson (Tex. Civ. App.) 273 S. W. 622, 623; Jacksonville v. McCraken et ux. (Tex. Com. App.) 232 S. W. 294; Texas Central Ry. Co. v. Brown, 38 Tex. Civ. App. 610, 86 S. W. 659.

The appellee alleged that he had sustained permanent injury to his land. Under appellant's general denial, the issue as to whether the injuries were permanent or temporary was raised in the pleadings. The testimony is that nature will not remove the material from the creek and restore the premises to its original condition, and appellee testified that in his opinion the rocks, concrete blocks, etc., were too firmly embedded in the material filling up the creek to be removed.

Appellee complained to appellant's agents several times that the material unloaded along the dump and at the abutments of the bridge was washing into and filling up the creek where his supply of water accumulated and was held. So far as the record discloses, appellant did nothing to prevent this, but continued unloading material at the same place to prevent the caving of the dump and abutments and the washing away of the bridge. ·It did offer to remove and did remove some of the light material washed out of the bed· of the creek and scattered over appellee's farm, but it made no offer to remove any material from the creek, and made no effort to do so. It offered no testimony to show that the condition of the creek would be restored by nature or could be restored by human labor. It pleaded and offered testimony to show that what it had done regarding the creek and all it had done was to protect its own premises so as to carry on its business of serving the public. It alleged "that the defendant had done all in its power to prevent injury to plaintiff." This statement, following a general denial, is not evidence, but suggests that appellant had no intention of claiming that the nuisance was abatable by a reasonable expense of money, time, and labor.

The testimony shows without substantial contradiction that the filling of the natural reservoir in the creek with the material washed therein on account of appellant's acts had, in effect. destroyed appellee's water supply permanently. That the character of the damages was not intermittent, occasional, or recurring. There is no testimony that the water supply at some times is sufficient for appellee's purposes and at other times that it is insufficient. The testimony shows that this was the only water supply the appellee had and the only supply that was available to him for use for stock water or for irrigation.

The damage to appellee resulted from a cause that appellant treated as permanent. Such cause had inflicted upon appellee a permanent injury. The appellant had, in effect, refused to remedy the condition, and alleged, in effect, that it could do nothing to abate the injury.

It is held in City of Paris v. Allred, supra, that under the facts it was not error for the court to assume that the injury, if any, to plaintiff's land, was permanent.

In St. L. S. W. Ry. Co. of Texas v. Wilson, supra, the court, speaking of appellant, says: "Its main contention is that the court should have limited appellee's recovery to what it would cost to restore his property to its original condition. This contention is based upon appellant's assumption that the injury to appellee's property was caused by conditions that could be abated by defendant voluntarily, or at the suit of plaintiff or any other interested party, and that the property. could be restored to its original condition by the expenditure of a reasonable sum of money. The facts already stated by us show that the cause of the damage to appellee's property is permanent and has been so treated by appellant, and that appellee is unable to help himself."

After stating the true rule for the measure of damages and citing numerous authorities, the court continues: "Nor was the trial court in error in refusing to submit to the jury, at appellant's request, the question as to whether the injury to plaintiff's property was temporary or permanent. As we have stated, upon the undisputed facts in this record, the injury to appellee's property, as well as the cause thereof, was permanent, and so treated by appellant, and it cannot now be permitted to claim the contrary."

In Jacksonville v. McCraken et ux., supra, it is held that it was not error for the court

to fail to submit to the jury the issue of temporary damages, notwithstanding the appellant objected to the submission of the issue of permanent damages, as no request was made to have the issue of temporary damages submitted.

In the case under consideration, appellant did not plead affirmatively that the damages were but temporary. The issue was raised only by a general denial, and it did not request the court to submit to the jury any issue which would determine whether the damages were permanent or temporary.

In speaking of the injury to the land where it was claimed that the turf and sod had been injured by fire, the Supreme Court, in Ft. W. & N. O. Ry. Co. v. Wallace, 74 Tex. 581, 12 S. W. 227, 228, states: "The turf or sod was a part of the land, and an injury to it was an injury to the land which could be as well measured by the difference in the value of the land before the burn and afterwards as by an inquiry as to the sum which would compensate the plaintiff for any injury to the turf or sod. The measure is the same, whether expressed in the one way or the other. Such an injury is one in its nature permanent, though it may not be perpetual, and differs from an injury to a growing crop, which does not result in any injury to the land as distinguished from the crop."

In this case, the appellant, under the findings of the jury, the correctness of which are not attacked, by its negligence had destroyed the natural reservoir on appellee's land which furnished him a sufficient and permanent supply of water, thereby depriving appellee of a supply of water for his stock and for irrigation. This injury was permanent.

In Morton Salt Co. v. Lybrand (Tex. Civ. App.) 292 S. W. 264, the court holds that, notwithstanding the jury found that the injury to appellee's land was temporary, the trial court was authorized to ignore this finding and assess the damages at the difference in the value of the land immediately before and immediately after the injury, because the uncontroverted testimony showed that the injury was permanent.

Under the record in this case, it is our opinion that the court, after directing the jury not to consider any of the deposits that had washed onto plaintiff's land outside of the draw, as contributing to any damage they might determine that appellee had suffered, correctly instructed the jury that the measure of plaintiff's damage was the difference between the reasonable cash value of his land immediately before and immediately after the injury.

The appellant assails as error the action of the court in rendering judgment against it, because the evidence shows that any injuries sustained by plaintiff were temporary only and could have been abated, and fails to show or tend to show what amount of damage plaintiff would suffer if the materials washed into and filling up the creek were removed.

What we have heretofore said disposes of this contention.

The judgment is affirmed.