**EAST TEXAS OIL REFINING CO. v. MABEE CONSOLIDATED COR-PORATION.**

**No. 5043.**

Court of Civil Appeals of Texas.
Texarkana.

March 6, 1937.

Rehearing Denied April 1, 1937.

Joe E. Estes, of Tyler, Phillips, Trammell, Chizum, Estes & Edwards, of Fort Worth, J. J. Collins, of Lufkin, and Lightfoot & Robertson, of Fort Worth, for appellant.

Ramey, Calhoun & Marsh, of Tyler, for appellee.

WILLIAMS, Justice.

A pipe line constructed, owned, and operated by appellant · was dynamited by some person unknown to appellant or appellee, and by one not in any wise associated or connected with them. This explosion which occurred around 11 a. m. caused a break in the pipe line, which resulted in some 1,700 barrels of East Texas crude oil flowing out of the break on to the ground and into a creek at a point about a mile from appellee's drilling rig, floating down the creek to, under, and around this rig. Around 6 p. m. of the same day this oil which had so escaped became ignited, and the flames spread, burning and otherwise damaging the rig. Suit was brought for the damages to this rig; the pleadings and issues being predicated upon negligence of the owner of the pipe line. Upon findings of the jury judgment was entered for appellee.

■ At the outset it can be said that the pipe line company was wholly blameless in the explosion and breaking of its line. Yet at the same time it was engaged in the gathering and transportation of East Texas crude oil, a highly inflammable and combustible commodity; and that a part of this crude oil which had escaped spread upon and around the premises of appellee when, and at some point on the creek between the break in the line and the rig, the oil became ignited and spread to appellee's property. No complaint was made of any defective construction of the pipe line. Appellee was not in fault that its premises were so saturated, and the jury absolved appellee of any contributory negligence. The operation of a pipe line properly constructed, carrying a highly combustible and inflammable liquid, is not a nuisance per se, and recovery for damages resulting from the construction or operation of same becomes a question of negligence or not, depending, as in other cases of negligence, upon the inquiry whether or not there has been a neglect or violation of the duty which the law imposes upon all persons to use due care in the use of their property or the conduct of their business to avoid injury to others. Turner et al. v. Big Lake Oil Co. (Tex.Sup.) 96 S.W.(2d) 221; Lone Star Gas Co. v. Hutton (Tex.Com.App.) 58 S.W.(2d) 19.

■ Answering special issue No. 3, the jury found that appellant by the use of that degree of care and foresight which a person of ordinary prudence would exercise under the same or similar circumstances could have discovered the breakage of its pipe line in sufficient time to have prevented the oil from flowing into the creek and around appellee's drilling rig. An issue as to whether this finding of negligence was the proximate cause of the damages was neither submitted nor requested. Contention is made that this finding is unsupported by the evidence. The witness Patterson testified that he heard the explosion and discovered the oil escaping around 11 o'clock, and shortly after 1 p. m. of the same day he went to the offices of appellant and notified them of the break, its location, and that the oil was flowing down the creek; and that probably the line belonged to appellant; and, quoting this witness further, "the man in the office didn't seem to pay any attention very much to me." But appellant's witness testified that their first knowledge of the explosion was brought to them around 3:30 by a man and woman who came to the office and reported same. This break was approximately 6 miles from the offices of appellant. Between 4 and 5 o'clock in the afternoon a crew of men arrived to repair the break. The line at the time of the explosion was carrying 500 pounds pressure; and the line had at least one or maybe more subsidiary lines equipped with pumps pumping oil into the main line. It was in evidence that a break in the pipe line or a shutting down of a subsidiary pump would have caused the gauge showing the amount of pressure to drop, and to drop promptly. Other evidence was heard by the jury pro and con upon what a gauge would show as to a break or leak, and when appellant first learned of the explosion. And a careful review of the testimony will not warrant setting aside this finding of the jury.

■ Special issue No. 10, answered by the jury, affirmatively reads as follows: "Do you find from a preponderance of the evidence that the defendant, its agents or employees, permitted the oil in said creek to become ignited?" This was found

by the jury to be negligence and that it was a proximate cause of the damages. Complaint is made that these affirmative findings are unsupported by the evidence, and that special issue No. 10 was not a submission to the jury of a fact finding, but a conclusion of law. Appellant in connection herewith requested its special charge No. 2, which was refused by the court, reading: "Do you find from the evidence that the setting on fire of the oil that had accumulated in the creek was the act of a third party, that is to say, some person other than the agent, servant or employee of the defendant?"

Near 3:30 p. m., according to appellant's version, when they first had knowledge of the break in the line, their main pumps were promptly cut off and a few minutes thereafter a field pump on a subsidiary line was stopped, thus cutting off the flow of the oil into or through the pipe line. That about thirty minutes later they had five or six employees at work repairing the line, at the same time dispatching some fourteen other employees up and down the creek. It is not clear from the evidence what all these fourteen men did, but some worked about a quarter of a mile below the bridge, damming up the creek in an effort to catch and impound the crude oil that had escaped. Between 5 and 6 o'clock, while these fourteen employees were upon the creek and at work, the oil caught fire some 150 feet from the drilling rig and apparently near the highway bridge. The record does not disclose the exact whereabouts of these employees on the creek at the time the oil ignited. It is not clear where the fire started. The evidence is silent as to whether any person other than these employees was around the creek. How the fire ignited is purely speculative, for there is no evidence showing how it ignited or if any third person purposely or accidently ignited it. The oil, if saved, was valuable, and certainly no employee of appellant purposely set it on fire. These employees, together with the foreman and the other crew of five or six men at work on the break, were the only people, so far as the record shows, who were near when the oil became ignited. Without quoting further from the evidence, it will suffice to say that there is no testimony in the evidence that raises the inference that some third party set fire to the oil, and we cannot agree to the contention that the affirmative findings to special issues Nos. 10, 11, and 12 were not supported by the evidence.

■ The use of the word "permitted" as used in this charge is not a legal term, but was simply inquiring from the jury if appellant's servants and employees permitted this oil to ignite. Quoting from 48 C.J. p. 924:

"Permit is not a technical word: has two significations, the first being where the mind consents to the act; the second, where the mind does not affirmatively agree to the act, but having the right and means to interfere to prevent it from transpiring, fails to do so.

"Where the mind does not affirmatively agree to the act, but has the right and the means to interfere to prevent the same from transpiring, but from want of care or neglect the person makes no move to prevent the act from taking place."

■■ The jury found that, if appellant had used ordinary care, it could have discovered the breakage of its pipe line in sufficient time to have prevented the oil from flowing down the creek and around appellee's rig. By its negligence, so found, appellant caused a dangerous instrumentality to spread upon and saturate the premises of appellee. Appellant by its special requested issue No. 2 sought to ascertain from the jury if some third party ignited the oil. If some third person intentionally or accidentally ignited this oil, would that relieve appellant from liability under the facts and findings of the jury in this case? If A negligently permits a can of explosive to be placed upon the premises of B, and then fails to guard it, and C, passing along the premises, throws a rock, or does some other act to cause this to explode and wreck the house of B, can it be said that the act of C would exonerate the negligence of A? The facts and findings in this cause are to some extent analogous to the liability imposed upon the keeper of a vicious animal, or the owner of an electric power line who negligently permits a dangerous instrumentality to trespass upon the premises of another. 20 R.C.L. Negligence, §§ 47–48. The acts of a third party, done intentionally or innocently, would not have exonerated appellant from its acts or its failure to act to prevent the fire as found by the jury. Appellant was charged with knowledge that East Texas crude oil was inflammable and easily ignitable, and to look out for the perils

ahead. The facts and findings here are controlled by the following extracts taken from 45 Cor.Jur. pp. 934, 936:

"If the misconduct is of a character which, according to the usual experience of mankind, is calculated to invite or to induce the intervention of some subsequent cause, the intervening cause will not excuse him and the subsequent mischief will be held to be the result of the original misconduct."

"The rule seems to be well established that the intervention of an independent agency does not break the causation in cases where the intervention of such agency ought to have been expected to occur according to ordinary experience; and that in such cases the original wrongdoer is liable for all injuries which follow as a direct result of the original negligence acting in combination with such intervening agency, even though the resulting injury could not have been produced by the original negligence alone."

In answering special issue No. 3 in the affirmative, the jury said appellant was negligent in not discovering the break in the line before it did. Answering special issues Nos. 2, 4, and 7 in the negative, the jury simply said appellant after it discovered the break could not prevent the oil in the creek from flowing around appellee's property; and did not continue to allow it to flow from its line into the creek; and did not continue to allow it to flow around appellee's property. The jury simply said appellant started too late in its efforts. There is no conflict in these findings.

Upon the issue of damages, the court submitted special issue No. 13, which read as follows:

"What amount of money, if any, paid now in cash, do you find from a preponderance of the evidence, will fairly and reasonably compensate plaintiff for the damage, if any, to the property and equipment of said well, as a result of the fire which occurred on March 11, 1933? Answer by stating the amount, if any you find, in dollars and cents.

"In connection with the foregoing question you are instructed that you may take into consideration the difference, if any, between the fair and reasonable cash market value of the property and equipment claimed to be damaged as it existed immediately before and immediately after the fire, in the locality where it was situated, plus the reasonable cash market value of labor, services, reasonably necessary in replacing said property and equipment."

Defendant objected to that part of the court's charge where it authorized the jury to take into consideration "the reasonable cash market value of labor, services necessary in replacing said property and equipment," in that the same allows double damages to the plaintiff, and is not a proper element of damages. Appellee's pleadings and evidence itemized the various parts of this rig which were destroyed and replaced, totaling $1,990.03; and listed the other items of shop work, labor, and transportation, making the aggregate sum of $2,400 in damages sought. These items nor the amounts were seriously disputed or contested by appellant in the trial. And from the testimony so produced the jury found the amount of damages at $1,500. If the measure of damages as submitted was error, from the record we feel that same was harmless.

The judgment is affirmed.