**HUMBLE PIPE LINE COMPANY,**
Appellant,

v.

**W. C. ANDERSON et ux., and Ira H. Westerfield et ux., Appellees.**

No. 3766.

Court of Civil Appeals of Texas.

Waco.

July 29, 1960.

Rehearing Denied Oct. 13, 1960.

Richey, Sheehy & Teeling, Waco, K. C. Minter, Houston, for appellant.

Dunnam & Dunnam, Waco, for appellees.

TIREY, Justice.

This is a suit for injuries to land alleged to have resulted from the pollution of a water well by crude oil. Appellees specifically alleged that the oil came from a leak in defendant's pipe line, and that the oil penetrated the soil and the water bearing formation of appellees' land. Originally two separate suits were filed, and they were consolidated by order of the court prior to trial because there was only one water well involved, it being a boundary line well in which the appellees owned equal rights. The well in question is a shallow, hand-dug well approximately 18 feet deep. It was shown to be the only present source of water on the Anderson 235 acre farm but was only one of three wells on the Westerfield 115½ acre farm. Plaintiffs claimed the oil in this well had reduced the value of their entire farms by fifty percent. Oil first appeared in the well in the middle of April, 1959. Shortly thereafter a representative of Humble offered to clean out the well at no expense to appellees. This permission was at first granted, but when Humble work gang arrived to do the job, they were refused permission to do it. Thereafter, on May 1, 1959, both suits were filed. Trial was had and judgment entered in October, 1959. Neither of the plaintiffs made any attempt to clean out the well or to replace it with another well.

Testimony was tendered to the effect that the only source of oil from the pipe line that could have gotten into the well was a leak found 4290 feet from the well, and almost that far from the nearest part of appellees' land. Plaintiffs contended that oil from this leak had reached the well by percolating underground. Plaintiffs grounded their suits alternatively on nuisance, negligence and trespass. The jury in its verdict found:

(1, 2, 3 and 4) That the crude oil escaping from the pipe line permeated the underground structure of each farm; that it polluted the water flowing into the well and rendered it unfit for human consumption, and that such pollution is permanent;

(5, 6, and 7) That the market value of the Anderson land of 235 acres was $125 per acre prior to the 15th of April, 1959, and that the pollution of said well had reduced the market value, and that the reasonable market value thereafter was $85 per acre;

(8, 9 and 10) That the market value of the Westerfield 115 acres was $125 per acre prior to the 15th of April, 1959, and that the pollution of said well had reduced the market value, and that the reasonable market value thereafter was $90 per acre;

(11, 12, 13 and 14) That defendant had notice of the leaky condition of its pipe line, but did not answer No. 12, which was:

"Do you find from a preponderance of the evidence, if any, that Humble Pipe Line Company was negligent in its maintenance of the pipe line in question?"

and did not answer No. 13, which was:

"Do you find from a preponderance of the evidence, if any, that such negligence, if any, was a proximate cause of the pollution of plaintiffs Anderson and Westerfield's water well?"

No. 14 is:

"Do you find from a preponderance of the evidence, if any, that the pollution of plaintiffs Anderson and Westerfield's water well, if you have found it was polluted, is temporary?"

to which the jury answered "Yes."

Plaintiffs seasonably filed their joint motion for judgments on the verdict of the jury, but in such motion alleged that the Court erred in submitting Issues Nos. 4 and 14, and asked the court to disregard the jury's answers to them. It further alleged that the court erroneously submitted Issues 12 and 13, with reference to negligence and proximate cause, and that since the jury failed to answer each of these issues, that the court base its judgment on the jury's answers to Issues 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 and 11. The court granted this motion and awarded judgment accordingly in behalf of each plaintiff. The award in favor of Anderson was in the sum of $9400, and that in favor of the Westerfields was for $4042.52, with legal interest on each sum from the 9th day of October, 1959, with all costs. In the decree we find this recital:

"And it appearing to the court from the uncontradicted evidence and the special findings of the jury that crude oil escaped from the defendant's pipe line and permeated and polluted the underground structures of plaintiffs, Andersons' and Westerfields' farms in and about the well therein and polluted the water flowing into said well and in the water-bearing structure leading thereto, rendering the water unfit for human consumption, and creating a permanent nuisance, thereby reducing the market value of plaintiffs said farms as found by the jury; and

"It further appearing to the court that Special Issues Numbers 4 and 14, submitted by the court to the jury, and the jury's answers thereto, are immaterial and do not affect the rights of the parties plaintiff and defendant herein, said issues Numbers 4 and 14 and the jury's answers thereto are hereby in all things set aside; and

"It further appearing to the court that the court finds that Special Issues Numbers 12 and 13 submitted by the court to the jury, which were not answered by the jury, are immaterial and should be disregarded, the same are hereby in all things set aside and disregarded; and

"It further appearing to the court from the uncontradicted evidence and the special verdict and findings of the jury that the plaintiff, W. C. Anderson and wife, Jessie Anderson, by reason of the escape of crude oil from defendant's pipe line and the permeation of the underground waterbearing structure of said plaintiffs' land with crude oil, polluting the underground structure thereof and the water flowing therein and into said plaintiffs' well, rendering the same unfit for human consumption, the market value of their 235 acres of land has been reduced to the extent and amount of $40.00 per acre; and

"It further appearing to the court from the uncontradicted evidence and the special verdict and findings of the jury that the escape of crude oil from

defendant's pipe line, which permeated the underground waterbearing structure of plaintiffs, Ira H. Westerfield and wife, Florence Westerfield's 115½ acres of land, polluting the water flowing therein and into their well, rendering the waters therein and in said structure, unfit for human consumption, has reduced the market value of said land to the extent and amount of $35.00 per acre."

The decree is assailed on four points. They are substantially to the effect:

(1) The burden was on the plaintiffs to obtain a finding that the injury to the land was permanent and not temporary, and it was error for the trial court to render judgment in the face of a finding that it was temporary.

(2) The true issue was whether the injury to the land was permanent or temporary, rather than whether the pollution of the well was permanent or temporary, and the trial court erred in submitting the issues only on pollution of the well.

(3) The court erred in rendering judgment in the absence of a finding of negligence, because a pipe line is not a nuisance per se, and negligence is an essential element of a cause of action for nuisance resulting from the escape of oil from a pipe line.

(4) The leaking of oil from the pipe line and its percolation underground to the land of appellees was, as a matter of law, insufficient to constitute a trespass.

Going back to a consideration of appellant's Points 1 and 2, we are of the view that each of these points must be sustained under the doctrine announced by this court in Burlington-Rock Island Railroad Co. v. Newsom et ux., 239 S.W.2d 734, 736, no writ hist. In that case, this court held in effect that in a suit for damages for permanent injury to land, where the evidence is conflicting as to whether the injury is permanent or temporary, that a finding on this point is essential to any recovery in behalf of the plaintiff. In that opinion this court said:

"The fundamental purpose underlying all rules for the measurement of actual damages is to indemnify an aggrieved party for the pecuniary loss suffered by him, so as to place him as nearly as possible in the same position he would have occupied but for the injury of which he complains." Citing many authorities.

In the case at bar, the court submitted Issue No. 4, which was:

"Do you find from a preponderance of the evidence, if any, that the pollution of plaintiffs Anderson and Westerfield's water well, if you have found it was polluted, is permanent? Answer 'Yes' or 'No.'"

to which the jury answered "Yes."

Issue No. 14 of the Court's Charge is:

"Do you find from a preponderance of the evidence, if any, that the pollution of plaintiffs Anderson and Westerfield's water well, if you have found it was polluted, is temporary? Answer 'Yes' or 'No.'"

to which the jury answered "Yes." The direct and irreconcilable conflict is obvious.

Defendant, in its objections to the Court's Charge, pointed out that Issue No. 4 is not based (a) on any pleadings; and (b) that said issue is not an ultimate issue in the case, for the reason that even though the jury might find the water well to be permanently polluted, it would not follow that the injury to the land in question was permanent. We think these exceptions should have been sustained.

In addition thereto, defendant seasonably presented to the trial court its Special Issue No. 1, which was:

"Do you find from a preponderance of the evidence, if any, that the damage

to the lands of plaintiffs, Anderson and Westerfield, if any, which resulted from the pollution of the well in question, if you have found it was polluted, is temporary?"

This issue was refused. No issue was submitted by the Court in its Main Charge on whether the injury to the land was permanent or temporary and, needless to say, it was the burden of the plaintiffs to see that such issue was submitted. It is true that the appellees pleaded that the pollution of the water well by the oil had forever ruined the well as a fine source of water, doing permanent injury to their land; but the trial court was not authorized, on a jury trial, to assume and find that the pollution of the well, under this record, was a permanent injury to the land. It is true that appellees tendered some proof to the effect that whatever part of the land had oil under it would be affected by such oil permanently. However, this witness did not say that all or any particular part of the land was affected, and he further said, in effect, that the oil might have run under the land only in a narrow streak. All of the appellees' evidence on damages was based upon permanent injury to the land.

Appellant pleaded as one of its defenses that the injury to the land was not permanent, in that the well could be restored to its former condition, or that a new well could be dug on each of the farms which would be in all respects as good as the old ones, and it tendered substantial evidence in support of its contention, and this created an issue that the injury to the land was temporary to be submitted to the jury. In this connection, testimony was tendered to the effect that there were numerous other wells in the neighborhood of the same type as the well in question, and that none of the others had any show of oil, and such testimony is some evidence of the fact that a large area underground had not been affected by the oil.

Ever since the decision of the Supreme Court in Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517, our courts have consistently held that where a defense is plead and evidence is tendered thereon, such defense must be submitted to the jury. See also Wichita Falls & O. R. R. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79, and Rules 277–279 Texas Rules of Civil Procedure. See also Thompson v. Robbins, 157 Tex. 463, 304 S.W.2d 111.

But appellees contend that the trial court correctly held that the injury to appellees' land was permanent, as a matter of law, and that a finding of negligence was not essential to appellees' cause of action. They rely on the following cases: Burlington-Rock Island R. Co. v. Newsom, Tex.Civ. App., 239 S.W.2d 734 (no writ hist.); City of Abilene v. Walker, Tex.Civ.App., 309 S. W.2d 494, 495, 496 (no writ hist.); Columbian Carbon Co. v. Tholen, Tex.Civ.App., 199 S.W.2d 825 (er. ref.); Continental Oil Co. v. Berry, Tex.Civ.App., 52 S.W.2d 953 (er. ref.); Ft. Worth & Denver City Ry. Co. v. Muncy, Tex.Civ.App., 31 S.W.2d 491; Gulf Pipe Line Co. v. Hurst, Tex.Civ.App., 230 S.W. 1024 (no writ hist.); Hauck v. Tidewater Pipe Line Co., 153 Pa. 366, 26 A. 644; Morton Salt Co. v. Lybrand, Tex.Civ. App., 292 S.W. 264 (writ dis.); Rule 279 Texas Rules of Civil Procedure; Texas Co. v. Giddings, Tex.Civ.App., 148 S.W. 1142 (no writ hist.); Texas Co. v. Earles, Tex. Civ.App., 164 S.W. 28 (no writ hist.); Texas & P. R. Co. v. O'Mahoney, 24 Tex. Civ.App. 631, 60 S.W. 902 (writ ref.); and Turner v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221.

We have given careful consideration to each of the cases cited by appellees and do not believe that they sustain their contention, in view of the decision of our Supreme Court in Turner v. Big Lake Oil Co., supra. We think the opinion of the Supreme Court settles this question adversely to appellees' contention. The opinion reviews at great length the decisions of the courts of Texas, and other decisions, relative to these questions, and discusses at length the O'Mahoney case, supra, and

Texas & Pacific Ry. Co. v. Frazer, Tex. Civ.App., 182 S.W. 1161. Each of these cases have writs or error refused outright prior to our present rule, which became effective in June, 1927. The opinion points out that at the time that court refused these writs, it was compelled by its jurisdictional statutes either to grant or refuse the applications; that because the court was of the view that the judgments entered in each case were correct, it was their duty to refuse the writs, and said [128 Tex. 155, 96 S.W.2d 227]:

> "Such refusals are not to be construed as an approval of all the reasons assigned by the Courts of Civil Appeals for their legal conclusions."

We think a careful reading of the O'Mahoney case, supra, and the Frazer case, supra, shows a very different factual situation than we have before us in the the case at bar. As we understand the O'Mahoney and Frazer cases, they were dealing with damages to the entire tract of land. Here, we are dealing with damage to land that results from the pollution of the water well, and the allegation that such pollution of the well has resulted in damage to the land as to market value. We think the opinion in The Texas Co. v. Giddings, supra, and Texas & Pacific v. Earles, supra, are in conflict with the rule in Turner v. Big Lake Oil Co., supra. A careful reading of each of the foregoing cases will show that the rule of law applied to the factual situation there existing was the doctrine announced in the O'Mahoney case, supra. Nor do we believe that the opinion of the Supreme Court of Pennsylvania in Hauck v. Tidewater Pipe Line, Ltd., supra, supports appellees' contention. In that opinion we find this statement [153 Pa. 366, 26 A. 645]:

> "The railroad companies in those cases were clothed with the right of eminent domain, and were expressly authorized by law to construct their roads and operate them. It was held, therefore, that any injury resulting from such operation, without negli-

gence and without malice, was damnum absque injuria. In the case at hand the company was clothed with no such powers."

It is obvious, therefore, that the Pennsylvania rule is not contra to the rule announced by our Supreme Court in the Big Lake Oil Case, supra. We think it is important here to say that the Supreme Court in the Big Lake Oil case, supra, strongly approved and quoted from the opinion of the Eastland court in Cosden Oil Co. v. Sides, Tex.Civ.App., 35 S.W.2d 815, (no writ hist.), which opinion dealt specifically with the nuisance question in a case, in all essential respects, very similar to the case before us.

In the Cosden case, the court held that no right of recovery was shown independently of the existence of negligence. That statement is in accord with the statement of our Supreme Court in the Big Lake Oil case, supra, wherein the court said [128 Tex. 155, 96 S.W.2d 226]:

> "Nor are we prepared to say that the conveyance of oil by pipe lines is an unnatural use of land, and that the rule of absolute liability should be applied to them."

As we understand our Texas courts, they hold in effect that if a business is of such a nature that it inevitably will do substantial injury to those around it, even though it is operated carefully and properly, then it is a nuisance per se, and those injured will have redress, regardless of negligence. If such a business is permitted to continue in spite of the injury to others, because of its utility to the public, then it must compensate those injured. But if a business is of such a nature and injury does not necessarily result from its operation, then it is not a nuisance per se, and liability depends upon negligence. This, we believe, is illustrated in the following cases: Columbian Carbon Co. v. Tholen, Tex.Civ. App., 199 S.W.2d 825, (er. ref.) and King v. Columbian Carbon Co., 5 Cir., 152 F.2d 636.

See also East Texas Oil Refining Co. v. Mabee Consolidated Corp., Tex.Civ.App., 103 S.W.2d 795, writ dis. 133 Tex. 300, 127 S.W.2d 445. (We do not think the decision in Morton Salt Co. v. Lybrand is contra to the rule announced in Turner v. Big Lake Oil Co., supra.)

In the case of King v. Columbian Carbon Co., supra, we find this statement [152 F.2d 639]:

> "Without doubt the Supreme Court of Texas has refused to follow the strict rule announced in Fletcher v. Rylands, supra, and has announced the rule, in cases where substances that are harmless and unobnoxious within themselves are stored or impounded upon one's land, no liability would follow for damages claimed for the escape, overflow, or seepage of such substances in the absence of an allegation and proof of negligence in the storage, keeping, or impounding thereof."

Since the pipe line in this case was a common carrier and had the right, under our statutes, to condemn, maintain and operate its pipe line over its right-of-way or easement in the construction and maintenance of the pipe line, it is not a nuisance per se, because injury to adjoining land, or land nearby is not a necessary and inevitable consequence of the operation of such a line. We are of the further view that under the decisions here cited, the rule of absolute liability cannot be applied to the factual situation here before us. As above pointed out, the court submitted the issue of negligence, but the jury was unable to agree on an answer thereto. It is our view that negligence was an essential element of appellees' cause of action, and it was error for the trial court to render judgment against appellant in the absence of a jury finding of negligence. See Cosden Oil Co. v. Sides, supra. See also: Lone Star Gas Co. v. Hutton, Tex.Com.App., 58 S.W.2d 19; Galveston, H. & S. Railway Co. v. Currie, 100 Tex. 136, 96 S.W. 1073; Missouri-Pacific Ry. Co. v. Platzer, 73 Tex. 117, 11 S.W. 160, 3 L.R.A. 639; Gulf, C. & S. F. Railway Co. v.

Oakes, 94 Tex. 155, 58 S.W. 999; and Continental Oil Co. v. Berry, Tex.Civ.App., 52 S.W.2d 953 (writ ref.).

We are of the further view that the leaking of oil from appellant's pipe line, and its percolation underground to the land of appellees was, as a matter of law, insufficient to constitute a trespass. See 41A, Tex. Jur., Trespass, Sec. 3.

Accordingly, appellant's Points 1, 2, 3, and 4 are each sustained, and this cause is reversed and remanded.

### On Motion for Rehearing

Chief Justice McDonald and Associate Justice Wilson are of the view that Points 1 and 2 discussed in our former opinion should be overruled; otherwise, they are in complete accord with our former opinion reversing and remanding the cause and are of the view that appellees' motion for rehearing should be overruled. The writer of the former opinion is still of the view that Points 1 and 2 should be sustained.

Accordingly, Appellees' Motion for Rehearing is overruled.