Gulf, Colorado & Santa Fe Railway Company v. W. B. Oakes.

No. 912.  Decided November 12, 1900.

**1.  Railway—Right of Way—Planting Bermuda Grass—Damages to Adjoining Proprietor.**

The planting of Bermuda grass on its right of way by a railway company, not being in itself unlawful, would not, unless shown to have been done under circumstances making it an unjustifiable use of its property by the company, render it liable for injury to the lands of an adjoining proprietor by the spreading of such grass thereon from the right of way.  (Pp. 157-163.)

**2.  Same—Liability for Negligence.**

It was a good defense to the action, that the railway company had acted as a person of ordinary prudence would have done under the same circumstances, in planting Bermuda grass on its right of way.  (P. 163.)

**3.  Railway—Use of Right of Way.**

The right of a railway company to use the land acquired for its right of way is subject only to the restrictions laid upon persons generally, with the addition that the use be for a purpose proper to the prudent maintenance and operation of the road.  (P. 162.)

**4.  Right to Use Land—Injury to Adjoining Proprietor.**

In determining what is a proper use of land by its owner, with reference to adjacent lands, the importance of the use to the owner as well as the extent of the damage to be inflicted upon his neighbor must be taken into consideration, and the rights of the parties are to be adjusted in a practical way,—the question being whether the proposed use is a reasonable one under all the circumstances.  (P. 160.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the Second District, in an appeal from Lamar County.

*H. D. McDonald* and *J. W. Terry,* for appellant.—Any owner of land has the lawful right to plant Bermuda grass thereon; he is not required by law to prevent it from spreading onto the lands of others, and if it does so spread and cause injury, he is not legally liable therefor. Coal Co. v. Sanderson, 113 Pa. St., 126; same case, 14 Am. and Eng. Corp. Cases, 656; 1. Suth. on Dam., sec. 3; Railway v. Spinks, 13 Texas Civ. App., 542; Construction Co. v. Meddlegge, 75 Texas, 634.

If appellant could be wrong on the proposition heretofore submitted, or if it could be held that there was any difference whatever between the right of a private person and that of a railroad company to plant this grass, then it is submitted that public policy touching the safe transportation of persons and property would authorize a railroad to plant the grass if it tended to make its roadbed safer and better, especially so when, in planting it, it exercised such care. and prudence to avoid injuring an adjacent owner as persons of ordinary prudence would commonly exercise under similar circumstances. Wood on Nuisance, sec. 130.

*Allen & Dohoney,* for appellee.—If a person has made any change in the natural condition of the soil, he is bound to prevent the creation of a nuisance from either natural or artificial causes; and if he puts in operation anything that with the co-operation of nature causes an injury resulting in damage to another, he is liable. 1 Wood on Nuisances, 3 ed., secs. 94, 106, 108, note 1, 116, note 4; Bishop on Non-Con. Law, secs. 97-109, 412; Mohr v. Gault, 10 Wis., 455; Hay v. Cohoes Co., 51 Am. Dec., 279, and note.

WILLIAMS, ASSOCIATE JUSTICE.—The certificate of the Court of Civil Appeals presenting the questions which we are called upon to decide is as follows:

"This suit was brought by appellee against appellant to recover damages for injuries done the farms of himself and wife by the spreading of Bermuda grass thereon, in consequence of its having been planted by appellant on its right of way where it runs through said farms. The case thus alleged was established by the evidence, and the appellee recovered a verdict and judgment for $200, from which appeal is prosecuted.

"The court instructed the jury that if appellant planted Bermuda grass upon its right of way where the same passes through said farms, and if said grass 'by its nature was calculated and liable to spread to and upon adjacent lands and damage and injure the same,' and if said grass did spread to and upon the lands of appellee and his wife, and if it injured and damaged said lands 'for the purposes for which the same was then being used,' to find for appellee; and refused an instruction to find for appellant, and also an instruction requested by appellant,

as follows: 'You are instructed that defendant railroad company had the right to improve its right of way in any manner it saw fit that would tend to make the roadbed safer or better; but in doing this, defendant would be required to exercise such care and prudence to avoid injury to plaintiff as persons of ordinary prudence would commonly exercise under similar circumstances. Hence, if you believe from the evidence that the planting of the Bermuda grass by the defendant on its right of way through the farm of plaintiff and his wife tended to improve its roadbed, and that planting the same was such an act as a person of ordinary prudence would commonly do under like circumstances, then plaintiff is not entitled to recover, even though his and his wife's farms may have been injured by the grass spreading thereon from the right of way.' To the charge so given and to the refusal of the requested instructions, the errors are assigned.

"We deem it advisable to certify to your honors for decision the questions so raised,—whether or not appellant was liable to appellee for the injury done to the lands through which appellant's railroad runs in consequence of the spreading of Bermuda grass thereon from appellant's right of way, or whether it was a good defense to the action that appellant had acted as a person of ordinary prudence would have done under the same circumstances in planting the grass upon its right of way."

The question to be decided is, whether or not from the bare facts that appellant planted the grass upon its right of way and that it spread to and injured adjacent farms of appellee, there results a liability for such injury on the part of appellant. These are the only facts stated for our consideration.

It is perhaps proper for the court to know judicially that this grass is much used and is valuable for pasturage, for the ornamentation of yards and lawns, and for the preservation of embankments; and that for the latter purpose it is often employed by railway companies in this State. In a general way we may know, too, that, by sending out roots and runners into adjacent soil, by the washing of water, and in other ways, it spreads and propagates itself, rapidly in some situations and kinds of soil, more slowly in others; and that it is often difficult to prevent or arrest this process or to cultivate other crops upon land where it has once become seated. But further than this we can not go in taking cognizance of any facts affecting the questions.

The act for which appellant is sought to be made liable is therefore the use upon its own land of a thing which is useful for some purposes and is not shown to have been employed by it for an improper purpose. Does the owner of the land who uses it for the growth of useful grass of this kind thereby become absolutely liable for damage done to another by its spreading upon his land? If so, the facts stated show a liability on the part of appellant. But if the liability is not thus absolute but depends upon peculiar conditions existing where the grass is planted, the plaintiff seeking to establish it would have the

burden of showing the facts out of which it would arise. The law in the abstract has been sometimes stated broadly enough to establish a liability of the kind first mentioned. Thus in the much quoted case of Fletcher v. Rylands, L. R., 1 Exch., 263, Blackburn, J., says: "The question of law therefore arises, what is the obligation which the law casts on a person who, like the defendants, lawfully brings on his land something which, though harmless whilst it remains there, will naturally do mischief if it escape out of his land. It is agreed on all hands that he must take care to keep in that which he has brought on the land and keeps there, in order that it may not escape and damage his neighbors, but the question arises whether the duty which the law casts upon him, under such circumstances, is an absolute duty to keep it in at his peril, or is, as the majority of the Court of Exchequer have thought, merely a duty to take all reasonable and prudent precautions, in order to keep it in, but no more. * * * We think that the true rule of law is, that the person who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape. He can excuse himself by showing that the escape was owing to the plaintiff's default; or perhaps that the escape was the consequence of vis major, or the act of God; but as nothing of this sort exists here, it is unnecessary to inquire what excuse would be sufficient." The act which the defendant in that case had done was to collect upon his land a large quantity of water in a reservoir, which, because of defective construction, broke and discharged its contents into plaintiff's mines. It has often been pointed out, especially by American courts and writers commenting on this decision, that the facts of the case established a liability because of negligence in the construction of the reservoir, but the court expressly waived the determination of any question of negligence and put its decision on the broad proposition that the liability resulted absolutely from the fact that injury had been inflicted upon another by the escape of a thing brought by the defendant upon his land, which was likely to do mischief if it escaped and which he was bound, at his peril, to keep in. This decision was affirmed in the House of Lords and the proposition above quoted was expressly approved, although the judges delivering opinions used language which might otherwise be understood to be a modification of it. L. R., 3 H. L. App. Cases, 330.

There have been subsequent decisions in England which some authorities regard as relaxing the rule in Fletcher v. Rylands, but it is unnecessary to refer especially to them. Cooley on Torts, 677-680. The rule laid down was largely deduced from prior rulings establishing absolute liability for damages caused by fires kindled on one's premises and spreading to those of another; by injuries inflicted by one, in his lawful self-defense against another, upon an innocent bystander; and by animals straying from the lands of their owners upon those of

others. The law has become settled, in this country at least, that there is no liability in the two first instances without negligence on the part of the person permitting the fire to spread or inflicting the injury; and in the case of animals, the law is entirely different in this and other States. Clarendon, etc., Co. v. McClelland Bros., 86 Texas, 179, same case, 89 Texas, 483.

By making the liability absolute, the rule in Fletcher v. Rylands, taken literally, imposes an unqualified restriction upon the right of an owner of land to put it to a use lawful in itself, and this is the aspect in which it has the most direct bearing upon the question before us. It so applies the maxim, "sic utere tuo," etc., as to make the owner of land liable, in all cases, for loss or damage suffered by another in consequence of the escape of anything brought by the owner upon his land, which, in escaping, is likely to do mischief. Of course, the broad proposition was laid down with reference to such things as the court had in mind and should not, even if accepted as generally correct, be applied indiscriminately to other facts which, in their nature, are essentially different. Even if the rule stated were a just one as defining the duty of one storing so dangerous and destructive an element as water is when moving in large volume, it should be applied with careful discrimination to things which, like grass, spread slowly and are subject to more or less control. The fact that the proposition as abstractly stated can not be justly applied to all subjects which its terms embrace is enough to show that it is incorrect as a statement of a general principle of law. Accordingly, it has not met with general acceptance in this country, most of the authorities holding that liability for such injuries must be based upon negligence or other culpability on the part of the person sought to be held responsible. The authorities are so numerous as to make a review or even the citation of them all impracticable. Cooley on Torts, 776, 777; Bishop on Non-Con. Law, 839, note 3; 1 Thomp. on Neg., 96; Coal Co. v. Sanderson, 113 Pa. St., 126; Loser v. Buchanan, 51 N. Y., 476; Brown v. Collins, 53 N. H., 442; Marshall v. Welwood, 38 N. J. L., 339.

It is a general principle of law that the owner of property may use it as he chooses, in any lawful way; but another maxim, in general terms, requires him to so use it as not to injure another. The application of these principles gives rise to some of the most difficult questions and delicate distinctions known to the law. Bishop concisely states the general doctrine thus: "One may not, either voluntarily or negligently, cast earth or other substance from his own ground on a neighbor's; or upon his own bring or erect anything, or change the natural position of anything, from which the air, the moving water, or any other force of nature will bear to another on other land what is distinctly injurious to him; or, by any excavation, structure, or other change of his premises from their natural condition, render them unsafe to other persons and their property lawfully thereon; while yet these restraints will not be drawn so closely as substantially to deprive him of the use of his lands,

or the ordinary pursuit of his own interests or to render him answerable for inevitable accidents injuring others." Non-Con. Law, sec. 829.

Since the owner may use his land as he chooses, if he does not violate any law, and is not to be substantially deprived of its use or of the ordinary pursuit of his own interests, but, at the same time, is required in its use to avoid injury to another, it at once follows that he may be required to forego a particular use when it is not essential to the substantial enjoyment of his property and is fraught with unreasonable loss to his neighbor. On the other hand, the particular use may be so important to the owner and the loss or inconvenience to his neighbor so slight, compared to his, were he forbidden to so employ his property, that it would be unreasonable and unjust to impose such a restriction. In such cases, it is evident that all of the circumstances of the situation must be taken into consideration, the importance of the use to the owner as well as the extent of the damage to be inflicted upon his neighbor, and the rights of the parties are to be adjusted in a practical way, the question being whether or not the proposed use is a reasonable one under all the circumstances. 1 Wood on Nuisances, 3; Bishop on Non-Cont. Law, secs. 418, 842. We are unable to discover that the law does, or, from the nature of the subject, can furnish a more definite rule. For this reason, we think it can not be laid down as a rule of law applicable to all circumstances and situations that one who plants Bermuda grass upon his premises makes himself liable for any damage that may result to his neighbor; nor, on the other hand, that he may not be liable under some circumstances and conditions. As is said in some of the authorities, there must, in such inquiries where rights and interest seem to conflict, be a balancing of them.

A great many cases have been adjudicated in the courts in which such acts as throwing upon the land or premises of another water, stones, rubbish, filth, smoke, dust, odors, gases, noises, vibrations, and the like, have been held to constitute actionable nuisances. In some of these cases the act amounted to a direct invasion of another's possession of his land and a violation of his absolute right, while in others, one in the prosecution of his business, useful and lawful in itself, interfered with his neighbor's use and enjoyment of his property. But in the latter class of cases, all of the facts and circumstances of the situation were developed and considered and the conclusion established that there was an unnecessary and unreasonable interference by one with the other.

The cases in which trees belonging to one overhang with their branches or penetrate with their roots the soil of another, inflicting special damage, have been adjudged to be nuisances at first sight, appear to be analogous to this. But they are distinguished by the fact that a tree and all its roots and branches belong to the owner of the soil upon which its trunk stands; and when its roots and branches extend upon the land of another, there is a direct invasion by the owner of the tree of the possession of such land and a use of it to maintain his

property, which is a violation of the absolute right of the adjacent owner to the exclusive possession and use of it. Grass, when it spreads upon and takes root in the adjacent soil, becomes the property of the owner thereof and he may do with it as he will, and hence there is no direct violation of his absolute right to the sole use and possession of his property. The question of liability, therefore, depends on the character of the act of introducing the grass, as before indicated. Grandona v. Lovdal, 70 Cal., 161; Buckingham v. Elliott, 62 Miss., 296; Crowhurst v. Amersham, 4 Exch. Div., 5; Earl of Lonsdale v. Nelson, 2 B. & C., 302.

In the case of McCutchen v. Blanton, 59 Mississippi, 116, owners of farms sought to enjoin an adjoining proprietor from sowing upon his land the seed of Johnson grass, asserting that, if sown, the grass seeds and joints would be carried by wind, water, animals, and birds upon their lands and would there take root and spread and destroy its usefulness for the production of corn, cotton, and other crops. The Supreme Court said: "How far everyone has the right to plant in his own soil anything he pleases which is useful and beneficial, although the natural and probable consequence may be its spreading to the adjacent lands of others by the operation of what may be called natural causes, is, so far as we can learn, undecided by any court." After referring to and distinguishing other cases, the opinion proceeds: "But in this case we have a controversy between proprietors of the fee sustaining no other relation to each other than ownership of neighboring lands imposes as to the right of one to plant in his own soil. Certainly the complainants in this case have the right to devote their lands to cotton, corn, or other products, and to preserve them for the continued production of such crops. Perhaps the appellant has the same right to devote his land to a valuable and useful grass, even if his doing so shall ultimately cause the adjacent lands of others to be converted into grass-fields, by causes other than his direct agency to produce such a result. We are met by conflicting rights. There must be a balancing of them. There should be no restriction of the just right of one further than is necessary to protect another in the enjoyment of his. It may be an incident of the social state and contiguity of territory that each owner must bear the consequence of the exercise of the right of every other proprietor to pursue that particular kind of agriculture he may choose. It may be that unlimited freedom in this respect to each proprietor is the surest guarantee of the good of all. We will not decide this now, but content ourselves with the suggestions made and place our conclusion on other grounds as sufficient to sustain it." The injunction was refused because the evidence did not show with sufficient certainty that the sowing of the seed would result in the consequences averred.

It may be conceded that if a mischievous grass, not naturally growing upon land but brought there by its owner, would inevitably so spread upon adjoining farms as to destroy their capacity to produce any other crops, the introduction of it would be an unreasonable use of his land

by such owner, because it would force others to forego all other uses of their own property. And so it might be under other circumstances less extreme than those supposed. But it is obvious that to establish a liability of this sort, the evidence must show the facts necessary to give rise to it.

It is conceded by all authorities that damage or inconvenience sustained by one from a state of things naturally existing upon the land of another furnishes no ground of complaint against the latter.

In Giles v. Walker, L. R., 24, Q. B. D., 656, the defendant had denuded his land adjoining plaintiff's of the timber which stood upon it, and thistles sprang up which the defendant failed to mow periodically, and in consequence their seeds were blown upon plaintiff's land and produced a heavy growth of the weed upon it. Plaintiff sued to recover for the damage thus done to his land. Chief Justice Coleridge said: "I never heard of such an action as this. There can be no duty as between adjoining occupiers to cut the thistles, which are the natural growth of the land."

While Bermuda grass is not indigenious to the soil in this State, it may be found that in localities it has so long and so extensively grown that the reason of this rule would apply to it.

We have so far treated the question as if appellant occupied the position of any other land owner. It has the right to use the land acquired for its right of way for all purposes proper to the prudent maintenance and operation of its road, and if Bermuda grass is useful as an instrumentality for keeping its roadbed in order, it has, we think, the right to so use it with the restrictions laid upon persons generally. The necessity or importance of using it may vary with the purposes to be accomplished thereby, and the limited extent to which such companies can use the land may influence the inquiry, whether or not, under all the circumstances, such a use is reasonable, but in this respect only is there a difference, affecting this question, between the rights of such companies and other landowners. They would not be liable for an act which is a reasonable use of the right of way for proper purposes further than natural persons would be. Railway v. Meadows, 73 Texas, 35.

In the case of Brock v. Connecticut, etc., Railroad Company, 35 Vermont, 373, a company authorized to acquire a right of way and to operate and maintain a railway and required by law to fence its track, planted willow trees along the line separating its right of way from the adjoining lands, in low, marshy ground, intending that the trees should grow and furnish posts for its fence, and at the same time prevent the washing away of its embankment. Adjoining farm-owners sued to enjoin the planting of the trees, alleging that they would spread their branches over and extend their roots into their land, and that sprouts would spring up therefrom and their lands would be so shaded, exhausted, and injured as to render them almost valueless for the purposes of cultivation. The court, after pointing out the great injury which the

evidence showed would probably be caused to the lands of complainants, said: "By their charter, the company were bound to fence their road, and it was in view of this obligation that the price to be paid was fixed upon by the commissioner or the parties, but evidently neither party contemplated that the road was to be fenced in this unusual and extraordinary manner, in a way that should virtually destroy or render nearly worthless an amount of land along the sides of the road nearly, if not quite, equal to the amount taken, and that, too, by the introduction into the farms of the willow tree, which some of the witnesses represent as the common enemy of the farmer in that vicinity, and one with which they have been contending half their lives, a tree that most of the witnesses seem to consider as injurious to the surrounding land to an extent beyond that of most other trees. Whether one of two adjoining landowners, holding their titles in fee, and for the ordinary purposes of cultivation, would have the right to construct a fence in this manner on the line between them to the manifest injury of the other, is a question we are not now called upon to decide. But we think, in order to justify the railroad company in resorting to this method of fencing their road, in view of its effect upon the adjoining proprietor, there must be some strong and controlling necessity for their doing so. And we are wholly unable to find from the evidence the existence of any such necessity. There would seem from the testimony to be no great difficulty, with but slight additional expense, in constructing a fence in the ordinary form that would withstand the freshets that the fences on this road are subject to." This extract will serve to show the facts made to appear upon which the relief was granted, viz., that the fencing was done in an "unusual and extraordinary manner," inflicting great damage upon others without any "strong and controlling necessity therefor," which facts are wholly absent from the present case.

Since the planting of the grass was not in itself unlawful and is not shown to have been done under circumstances to make it an unjustifiable use of its property by appellant, we conclude that it is not shown to be liable for the damage of which appellee complains.

The answer to the other branch of the question, whether or not it was a good defense that appellant, in planting the grass, acted as a person of ordinary prudence would have done under the same circumstances, is involved in what we have already said. While the ground of liability, if one can be shown, would be negligence or other culpable conduct on the part of appellant, nothing of the sort could be imputed to it if what it did was, under the principles stated, only a legitimate use of its property, and the facts stated fail to show that it was not such a use.