**TEXAS LIME COMPANY, Appellant,**

v.

**Lavon HINDMAN et al., Appellees.**

No. 3429.

Court of Civil Appeals of Texas.

Waco.

Feb. 21, 1957.

Rehearing Denied March 21, 1957.

Curtis White, Dallas, Anderson & Anderson, Cleburne, for appellant.

James & Mahanay, Cleburne, for appellees.

TIREY, Justice.

This is a suit for permanent injunction and damages. At the conclusion of the testimony the court overruled defendants' motion for instructed verdict and submitted the cause to the jury on 55 special issues, all of which were answered in favor of plaintiffs. Defendants Limestone Products Company and Texas Lime Company each filed separate motions for judgment non obstante veredicto. The court granted motion of Limestone Products Company for judgment non obstante veredicto and decreed accordingly, to which judgment plaintiffs duly excepted. It overruled the motion for judgment non obstante veredicto of Texas Lime Company and decreed accordingly, to which its attorneys duly excepted. The court granted plaintiffs' motion for judgment against Texas Lime Company and decreed accordingly, to which defendant excepted.

This suit is complicated and does not yield to a simple statement. The plaintiffs (twelve separate causes) are used car dealers operating their businesses in the vicinity of a plant owned by the Limestone Products Company. At the times here complained of this corporation had leased its manufacturing plant to Texas Lime Company, which company was engaged in crushing rock and the manufacturing of limestone products. It was alleged that the Texas Lime Company leased this plant about April 1, 1953 and has proceeded to operate it at all times pertinent to this discussion. Plaintiffs went to trial on their first amended original petition and their first trial amendment and first supplemental petition.

Plaintiffs alleged in part:

"In the year 1946 the defendant Limestone Products Company began

and constructed a plant for the production and manufacture of limestone products, including lime, on a tract of land approximately three-fourths of one mile south of the city limits of Cleburne, Texas, in Johnson County. Limited operation of such plant were begun in the year 1949 but such limited operations did not disturb the plaintiff in the course of their respective business and the enjoyment of their lands. In the early months of 1955, or about that time, the defendants greatly increased and altered their operations in producing their products, and said increased and changed operation immediately caused great quantities of lime, dust and other matters to be diffused into the atmosphere about such plant and carried by the atmosphere onto the car lots and automobiles belonging to plaintiffs and located upon their respective lots, and such lime, dust and other matters began to settle and to this date do settle upon the buildings and automobiles on such car lots. The depositing of the above mentioned lime, dust and other foreign matter upon the buildings of plaintiffs has caused the reasonable cash market value of such buildings and land to decrease. The depositing of such lime, dust and other foreign matter from defendant's plant upon the automobiles belonging to each of plaintiffs and located upon their respective lots for sale has caused and still causes the paint and finish upon such automobiles to be damaged permanently, and plaintiffs and each of them have been put to great trouble and expense in attempting to remove such lime, dust and other foreign matter from the finish of said automobiles, but notwithstanding diligent effort on the part of plaintiffs and each of them to keep said automobiles free of said lime, dust and other foreign matter, the paint and finish on each and all of the said automobiles has been greatly damaged, thereby de-

creasing the reasonable cash market value of each and all of said automobiles. Further, the plaintiffs have been forced to spend great sums of money over and above that which they would normally have to spend to have said cars washed, polished and waxed time and time again, in a bona fide effort to minimize the damage done by the said lime, dust and other foreign matter, and such repeated washing, polishing and waxing of said cars damages the paint and finish of the said cars in that it wears the paint thin and in some cases has completely worn through the paint on said cars. The plant owned by defendants operates twenty-four hours daily, and the throwing off of such lime, dust and other foreign matter from the elevated smokestacks or chimneys is an operation which is continual, and the depositing of such lime, dust and other foreign matter upon the premises of plaintiffs is a continual depositing. This condition has existed in a great and increased amount since the spring of 1955, but has existed to some extent for the past year or two. The aforementioned condition has greatly damaged plaintiffs and their real and personal property, and has resulted in great personal inconvenience and monetary loss to each of plaintiffs, decreasing substantially their respective incomes and increasing substantially their expenses in operating their respective businesses. * * *

"The operations of the said plant in the manner in which it has been and is operated is a permanent nuisance, and has been a greater nuisance since the spring of 1955, and threatens to continue being a nuisance if not abated by this court. Plaintiffs and each of them have suffered great monetary damage, for which they and each of them are entitled to be compensated by the defendants, and unless the operation of the above described Limestone Products

plant and the throwing off of lime, dust and other foreign matter is enjoined and abated by this court, the plaintiffs and each of them will suffer incalculable damage to their real estate, personal property and their businesses, and the said damage will be so great and is so uncertain that the remedy at law of plaintiffs is inadequate, and the only way in which plaintiffs can be relieved of the oppressive nuisance and burden placed upon them by defendants is for this court to enjoin the diffusion and spreading of lime, dust and other foreign matter by defendants in such a manner that it is carried through the air onto plaintiffs' premises and their personal property."

Plaintiffs then set out the damages sustained by each separate plaintiff. The paragraph alleging the damages of the partnership of Hindman, Owen & Owen was to the effect that such firm had been caused to expend at least the sum of $4,940 for cleaning, waxing and polishing the automobiles which constitute their stock of merchandise, at least one-half of which sum, to-wit, $2,470, had been expended for removal of lime, dust and other foreign matter deposited on such cars by the operation of the Lime Plant; that they had suffered losses in the amount of at least $4,086 as the result of diminished market values of certain automobiles in their stock of merchandise, caused by the depositing of lime, dust and other foreign matter on their automobiles by the Lime Plant, and they alleged their total damages to be at least the sum of $6,556.

They alleged that the firm of Saunders & Saunders has been caused to expend $387.90 for cleaning, waxing and polishing the automobiles which constitute their stock of merchandise, and that one-half of such sum, namely $193.95, has been expended for the removal of lime, dust and other foreign matter deposited on the cars by the Lime Plant; that they had suffered losses in the amount of at least $2010 as the result of diminished market value of certain automobiles in their stock of merchandise, caused by the depositing of lime, dust and other foreign matter on their automobiles by the Lime Plant, and that their total damage is at least the sum of $2203.95.

They alleged that plaintiff Sam Barr had been damaged in the sum of $660 by reason of the decreased market value of certain automobiles contained in his stock of merchandise and that this damage was caused by the depositing of lime, dust and other foreign matter upon the cars by the Lime Plant. Barr further alleged that he had had further damages in that he was the owner of two lots of land near the city, and he gave the lot and block number, and that he was using the lots in his business and that his lots are periodically showered with lime, dust and other foreign matter from the Lime Plant, and that the automobiles and improvements on said lot are periodically covered with lime, dust and other foreign matter, causing the market value of said lots to be decreased $3,000; that the reasonable cash market value of said lots, if they were not affected by the aforesaid nuisance would be $20,000, but in view of the existence of said nuisance, their reasonable market value is only $17,000.

The partnership of Roy Johnston and Charlie Colee alleged that they had been forced to expend at least the sum of $925 for cleaning, polishing and waxing of automobiles which constitute their stock of merchandise, at least one-half of which has been expended for the purpose of removing lime, dust and other foreign matter deposited on the cars from the Lime Plant. They alleged that they had been further damaged in the amount of at least $645 caused by the decreased market value of certain automobiles in their stock of merchandise, which decrease was directly and proximately caused by the depositing of lime, dust and other foreign matter on their automobiles by the Lime Plant, and they alleged their total damage to be the sum of $1107.50.

Each of the other plaintiff's cause of action was alleged substantially in the same manner as those we have heretofore set out; that is to say, the damages were alleged in the aggregate, and it would serve no useful purpose to set them out.

Appellant's points 3, 4 and 18 assail the judgment of the court substantially as follows: (3 and 4) the court erred in overruling the exception of defendants to the failure of each plaintiff to specify in his pleadings the damages claimed to have been sustained by him as to specific automobiles and in permitting plaintiffs to introduce testimony as to alleged damages claimed to have been sustained by them with respect to specific automobiles over defendants' objection that the introduction of this testimony was not authorized by the pleadings; and (18) in submitting to the jury with respect to each plaintiff an issue as to the amount of damages sustained by reason of the diminution, if any, in the reasonable cash market value of the automobiles comprising each plaintiff's stock of merchandise caused solely by lime, dust or other foreign matter, if any, from the Lime Plant in question.

We have previously set out substantially the pleadings of Lavon Hindman, Dave Owen and Don Owen. We quote the exceptions of appellant to such pleadings:

"Defendants except to Section (a) of Paragraph V of Plaintiffs' First Amended Original Petition for the following reasons:

"a. The items which go to make up the $4,940.00 in cleaning, waxing and polishing expenses are not set forth.

"b. The claim that $2,470.00 of such amount, or one-half thereof, has been occasioned by the necessity of removing lime, dust and other foreign matter deposited on the cars is too general, vague and indefinite to inform the Defendants of what Plaintiffs expect to prove.

"c. Said sum of $2,470.00 is arbitrary and the items which go to make up said sum as to dates and amounts and particular cars involved are not specified.

"d. The claim that $4,086.00 is the diminished market value of certain automobiles is too vague and indefinite.

"e. Said sum is not itemized as to the kind and character of automobiles involved.

"f. The sum of $6,556.00, alleged total damages, is improperly itemized because it is no more possible to determine from this figure what specific items go into it to make it up than it is any of the other stated sums."

Similar exceptions were leveled at each of the respective causes of action and each was overruled.

Upon trial of this case the several plaintiffs sought to introduce and were permitted to introduce testimony as to the claimed loss of value of specific automobiles over defendants' repeated objections that there were no allegations in plaintiffs' pleadings with reference to the particular car about which specific testimony was offered. For example, defendants' counsel was interrogating plaintiff Don Moore about a specific car:

"Q. Did you or not have a 1955 Studebaker half ton pickup that it got on? A. Yes, sir.

"Q. Had the dust not gotten on that pickup, Mr. Moore, what would have been its reasonable cash market value?

"Mr. Anderson: If the Court please, we again want to object to the testimony about the specific cars, and damage to specific cars, because there are no pleadings with reference to any specific cars, and we want to urge that objection again as to all testimony by this witness as to any specific cars, or damage to specific cars.

"Court: Overruled.

"Mr. Anderson: Note our exception. Will you give us a full bill as to all those?

"Court: All right."

Similar testimony was tendered by each of the other plaintiffs and substantially the same objections were made and were overruled.

In submitting issues to the jury concerning loss in value of cars, the trial court authorized the jury to take into consideration the entire stock of cars belonging to the several plaintiffs and did not inquire about any specific car. For example, with reference to the damages sustained by Hindman and Don and Dave Owen, the court submitted the following issues:

"1. Do you find from a preponderance of the evidence that the defendant, Texas Lime Company, has unreasonably allowed lime, dust and foreign matter to be discharged and escape from the Lime Plant and to be carried in substantial *quanitites* by the wind and air currents on to the property of Lavon Hindman, Dave Owen, and Don Owen, during the period from October 13, 1953, to the time of this trial?", to which the jury answered "Yes".

"2. Do you find from a preponderance of the evidence that the escaping lime, dust and foreign matter carried by the air currents and wind from the plant in question on to the properties of Lavon Hindman, Dave Owen and Don Owen, if you have so found, constitutes a nuisance to them and their properties, as that term is herein defined?", to which the jury answered "Yes".

"3. Do you find from a preponderance of the evidence that such nuisance, if you have so found it to be, is a permanent nuisance, as that term is herein defined?", to which the jury answered "It is a permanent nuisance."

"4. What amount of damages, if any, expressed in dollars and cents, do you find from a preponderance of the evidence has been suffered by the plaintiffs, Lavon Hindman, Dave Owen and Don Owen, solely caused by lime, dust, and/or foreign matter, if any, from defendant's plant since October 13, 1953?"

"In answering this question you may consider the following items and none other:

"(a) The amount of money, if any, reasonably expended from and after October 13, 1953, by the above named plaintiffs in washing, if any, polishing, if any, of automobiles constituting the stock of merchandise of said named plaintiffs caused solely by lime dust or other foreign matter, if any, from the Lime Plant in question;

"(b) The diminution, if any, in the reasonable cash market value of the automobiles comprising said named plaintiffs' stock of merchandise, caused solely by lime, dust, or other foreign matter, if any, from the Lime Plant in question, from and after October 13, 1953."

to which the jury answered $4,307.09.

(The court submitted the damages of each of the other plaintiffs in substantially the same manner.)

Defendants objected to the submission of the damage issues pertaining to cars with respect to each plaintiff in part as follows:

"a. There is no pleading to support the submission of this issue.

"b. There is no evidence to support the submission of this issue.

"c. The evidence is insufficient to support the submission of this issue."

"1. Plaintiffs' proof as to diminution of automobiles concerns specific automobiles; therefore, it is improper to

submit a general issue on damages to a group of automobiles when the jury is given no opportunity to determine whether the proof as to any specific automobile was worthy of belief. The damages were sought to be shown with respect to each specific automobile and not with respect to a group of automobiles. Damages to all of the stock of the merchandise of the plaintiffs consisting of automobiles was not proved. Only damages to specific automobiles constituting a part of the stock of merchandise of the plaintiffs were sought to be proved. Both sections (a) and (b) of the instructions of the court thus would authorize the imposition of damages against the defendant for automobiles not even claimed to be damaged and upon which no proof whatever was offered. There is proof in the record that the plaintiffs owned many other automobiles comprising a part of their stock of merchandise but there is no proof that the plaintiffs suffered any diminution in value to all of their automobiles, yet, these instructions would authorize the jury to fix damages on all of the stock of merchandise consisting of automobiles owned by the plaintiffs."

We believe the special exceptions comply with Rule 91, Texas Rules of Civil Procedure. We are of the view that the trial court erred in its failure to sustain defendants' exception to the plaintiffs' failure to specify in the respective pleadings the damages claimed to have been sustained by each plaintiff to each specific automobile. As we understand appellees' contention, it is to the effect that it would have placed an unnecessary burden upon the plaintiffs, and that they were not required to plead their evidence. But these causes of action present a very difficult situation, and since the plaintiffs had to tender their proof to make out each case, we think that the pleadings should have advised the defendants of the exact nature of the cause of action so that it could prepare its defense as best it could,

and we do not see how defendants could have prepared their defense without knowing what it had to meet. We have previously set out substantially the pleadings of each plaintiff, and it is obvious that their allegations of damage are very general, and we think that since proper exception was filed by defendants to the general nature of the claims, plaintiffs should have been required to plead specifically their damages. The court not only permitted the plaintiffs to prove the expense that they went to in cleaning, polishing and waxing their cars, but then permitted the plaintiffs, in almost each instance, to estimate the amount of this cleaning process that was due to lime and dust and other foreign matter being deposited upon the stocks of merchandise, and in almost each instance they estimated it at 50%. The court also submitted to the jury an issue as to the amount of damages sustained by the diminution, if any, in the reasonable cash market value of the automobiles comprising each plaintiff's stock of merchandise caused by lime, dust or other foreign matter from the Lime Plant in question. Although there were no allegations as to the number of cars nor their kind or make, it is obvious that defendants did not know of the nature of the damage that each plaintiff had sustained until such testimony was tendered on the trial, and they had no opportunity to prepare their defense to such claimed damage. The purpose of a pleading is to inform the court and the adverse parties of what pleader's contentions will be on the trial of the case and the office of special exceptions to pleadings is to furnish the adverse party a medium by which to force clarification of and specifications in pleadings when not clear or sufficiently specific. This has been the rule in Texas for a long time and we find nothing in the new rules that contradicts the foregoing statement. See Shamburger Lumber Co. v. Delavan, Tex.Civ.App., 106 S.W.2d 351 (writ ref.). See also Southern Underwriters v. Dykes, Tex.Civ.App., 145 S.W.2d 1105; 17 Tex.Jur. 339; 8 Tex.Jur. Sup. 224, 225, 301.

■ We find that on a trial of this cause the various plaintiffs were permitted to introduce testimony as to the claimed loss of specific automobiles over defendants' repeated objections that there were no allegations in plaintiffs' pleadings with reference to the particular car about which specific testimony was offered. The foregoing illustrates the errors common to substantially all of the pleadings of each of the other plaintiffs, and to the testimony tendered by each of the plaintiffs. It is our view that such errors require us to reverse and remand this cause.

Point 5 is:

"The trial court erred in submitting to the jury with respect to each plaintiff an issue as to the amount of damages sustained by each plaintiff 'solely caused by lime and/or foreign matter from defendants' plant since October 13, 1953'."

Point 6 is:

"The trial court erred in submitting to the jury with respect to each plaintiff an issue inquiring whether the defendant, Texas Lime Company, had 'unreasonably allowed lime, dust and foreign matter to be discharged and escape from the Lime Plant and be carried in substantial quantities by the wind and air currents on to the property of each plaintiff during the period from October 13, 1953 to the time of this trial.'"

Point 10 is:

"The trial court erred in submitting to the jury with respect to each plaintiff owning land for which damages were sought an issue inquiring whether 'there has been a depreciation in the reasonable cash market value of (such plaintiff's) lot of land caused solely by the discharge and escape of lime, dust and foreign matter, if any, from the Lime Plant in question on (such plaintiff's) property since October 13, 1953.'"

Point 11 is:

"The trial court erred in submitting to the jury with respect to each plaintiff owning land for which damages were sought an issue inquiring what 'is the difference in the reasonable cash market value of (such plaintiff's) lot of land (identifying it) without the invasion of said property by lime, dust, and foreign matter, if any, from the Lime Plant in question, and the reasonable cash market value of (such plaintiff's) lot of land with the invasion thereof, if any, by lime, dust and foreign matter from the Lime Plant in question.'"

■ The inquiry as to damages should have been limited to the date that the respective plaintiffs began to suffer their detriment. For example, the first car to which Hindman testified there was any damage from lime dust was a 1952 Ford bought by him in November 1954. Damage to all other specific cars was to cars bought subsequent to that time. Milton Saunders did not start in business until August 16, 1955, and the first damage he had to any specific car was August 16, 1955. The first car Sam Barr testified as having been damaged was bought by him June 9, 1955. All cars which he testified suffered any diminution in value from lime dust were bought by him subsequent to that date. Bill Johnson's first diminution in value of car was to one bought by him May 19, 1955. All others were subsequently purchased. Johnnie Hudson's and Norvill Hudson's first diminution in value of car was to one bought by them January 1, 1955. All others purchased by them were subsequent to that date. Don Moore's first diminution in value of car was to one bought by him January 20, 1955. All 1955. All other purchases by him were subsequent to that date. Plaintiff Fulfer's damages began about four months prior to the trial. Plaintiff Stone did not acquire his property near the plant until September 1955. Roy Johnston claimed damage to a lot he acquired December 6, 1954. Ray Stovall testified that the dust

did not get bad enough to complain about until 1955.

It is clear to us that on a new trial the damage of each plaintiff cannot antecede the date that he claimed he sustained such damages. It follows that the use of the date, October 13, 1953, as a beginning date in each of the special issues is on the weight of the evidence. Defendants seasonably pointed out by exception "that the use of October 13, 1953 as a beginning date is on the weight of the evidence. It will lead the jury to believe that the court thinks October 13, 1953 is the beginning of the damages sustained by the plaintiff when this has neither been pleaded nor proved."

Going back to Issue No. 4, which was the damage issue, we find defendants seasonably urged the following objections:

"(f) The court in Section (a) of his instructions on this issue again uses the date October 13, 1953 when there is no evidence and no pleading that the plaintiffs sustained any damages until the early months of 1955. The use of this date is on the weight of the evidence therefore.

"(g) The court improperly authorizes the jury to find damages caused not by the operation of a nuisance but caused 'solely by lime dust or other foreign matter, if any, from the Lime Plant in question.

"(j) The plaintiffs only offered proof of the diminution of the market value of certain of their automobiles in the year 1955; but the court by his instruction (b) in connection with Special Issue No. 4 authorizes the jury to find damages for the diminution of the market value of automobiles clear back to October 13, 1953; this is on the weight of the evidence. It will lead the jury to believe the court thinks the plaintiffs suffered such damages even before they claimed any. Instruction (b) does not limit damages sustained by reason of a nuisance but simply authorizes a find-

ing of damages because of lime dust or other foreign matter emanating from the Lime Plant.

"(k) Instruction (a) authorizes the jury to find damages because of lime dust and other foreign matters coming from the Lime Plant and does not limit it to nuisance."

We think the foregoing exceptions and objections to the court's charge should have been sustained, and the foregoing exceptions are common to each of the respective causes of action. Needless to say, we think the foregoing errors require us to reverse and remand this cause.

■ Defendants seasonably filed and urged its pleas of misjoinder of parties and causes of action. They are respectively:

"Defendants say there is a misjoinder of parties in this cause on the face of the plaintiffs' petition. The plaintiffs, Lavon Hindman, Dave Owen and Don Owen, as shown in Section (a) of Paragraph V of said petition, claim to be partners in the operation of a certain used car lot located in Cleburne, Johnson County, Texas; in Section (b) of Paragraph V of said petition, Milton Saunders and W. E. Saunders claim to be partners in the operation of a used car lot in Cleburne, Texas; in Section (c) of Paragraph V, plaintiff Sam Barr claims to operate his used car lot in Cleburne, Texas by himself; in Section (d) of Paragraph V, plaintiffs Roy Johnston and Charlie Colee allege that they are partners and operate certain lots as a partnership in Cleburne, Texas; in Section (e) of Paragraph V, Lewis Tutt claims that he operates a used car lot in Cleburne, Texas; in Section (f) of Paragraph V, R. L. Webb claims he operates a used car lot in Cleburne, Texas; in Section (g) of Paragraph V, plaintiff Bill Johnson claims he operates a used car lot in Cleburne, Texas; in Section (h) of Paragraph V, Johnnie Hudson

and Norvill Hudson claim to be partners and claim to operate a used car lot in Cleburne, Texas; in Section (i) of Paragraph V, Plaintiff Don Moore claims he operates a used car lot and a used car business in Cleburne, Texas; in Section (j) of Paragraph V, Roy Fulfer claims he operates a used car business in Cleburne, Texas; in Section (k) of Paragraph V, Plaintiff Ray Stovall claims that he operates a used car business in Cleburne, Texas; and in Section (l) of Paragraph V, Milton Weedon claims he operates a used car business in Cleburne, Texas.

"All of the above mentioned parties do not claim that they have any joint interest in the claims of each other, but in the pleadings it is shown that such cause of action as they claim to have, if they have one, which is denied, is separate and distinct from that of the others. * * *

"Defendants except to said plaintiffs' first amended original petition because there is a clear misjoinder of causes of action. The locations of these various used car dealers are nowhere specified in said petition, nor is it shown what the proximity to the Lime Plant is of the respective lots owned and operated by the plaintiffs. Hence, questions of liability are necessarily distinct and different as to each of the plaintiffs. Issues as to damages as to the plaintiffs operating the several businesses will necessarily be different as to each one. In some instances damages to real estate are alleged, in others, merely damage to automobiles is attempted to be alleged, the issues on damages alone will seriously complicate any charge that may be given to the jury and will increase the complexity of the lawsuit to such an extent that the case cannot be properly tried. It is entirely conceivable that the defendants may be found liable for damages to some of the plaintiffs and not to others, and because the defendants may be lia-

ble to some one or more, their opportunities of successful defense against those to whom they may have no liability will be jeopardized."

Notwithstanding the provisions of Rule 40, T.R.C.P., it is our view that it is not applicable here because as we view the pleadings and the testimony as to the damage sustained by each plaintiff may depend to some extent on the proximity of his lot to the plant and the general nature of the surroundings and it does not appear that they were all the same; nor are the facts and surrounding circumstances of each claimant the same.

In defendants' motion we find this statement: "It is entirely conceivable that defendants may be found liable for damages to some of the plaintiffs and not to others, and because defendants may be liable to some one or more, their opportunities for subsequent defense against those to whom they may have no liability may be jeopardized." We think the foregoing statement is peculiarly applicable to the factual situation of the respective plaintiffs in this cause, and we are of the view that the facts and circumstances of each are such that each cause of action should be tried separately in order that justice may be done, and that the court abused its discretion in overruling the motion for misjoinder of parties and causes of action.

Point 19 is:

"The trial court erred in sustaining plaintiffs' exception No. 3, and in striking from defendants' first amended original answer 'after careful consideration as to location, transportation facilities, railroads and highways, the company purchased a tract of land in an area particularly adapted for industrial purposes because of its location upon the railroad and highway.' "

Point 20 is:

"Upon the trial and upon the examination of the witness J. Lambert Lain,

a witness for the defendant, the following occurred:

" 'Q. At the time of the selection of the site for the plant what were the surroundings of that particular site, as to whether or not there was any other industries or residences or anything in that particular neighborhood?

" 'Mr. James: We object to that for the reason it would be immaterial as to what was there. There is nothing in the issues about anything in the immediate vicinity of the plant there.'

"The trial court erred in sustaining that objection."

■ We think the trial court erred in sustaining the foregoing exception, and likewise the trial court erred in overruling the testimony tendered. The allegation and the testimony tendered are both pertinent to the doctrine of the balancing of equities.

■ Appellees assail the judgment of the trial court because it did not grant them a judgment for damages against the defendant Limestone Products Company in the same respective amounts as were awarded in favor of each of them against the Texas Lime Company. We see no error in this behalf. It is without dispute that the Texas Lime Company had leased the property and was operating it at the times complained of by appellees. First of all, there are no jury findings in answer to any issues upon which a judgment for damages against the Limestone Products Company could be based. It is true that appellees requested five special issues as to the defendant Limestone Products Company, but the court refused to submit such special issues, and, as we understand the record, there is no assignment of error in appellees' brief for the court's refusal to submit the five special issues. We think it is also true that the appellees failed to plead, and failed to offer any evidence that the use of the property of the defendant Limestone Products Company was

unreasonable, and that the unreasonable use of the property was the proximate cause of the damages to the appellees. We think it is also true that appellees failed to plead and failed to tender any evidence to the effect that the operation of the plant of the defendant Limestone Products Company was negligent, and that such negligent operation of the plant was the proximate cause of the damages to the appellees. Appellees likewise failed to request and obtain jury findings to the effect that the use of Limestone Products Company's property was unreasonable, or that the operation of the plant was negligent, or that the negligent operation of the plant was the proximate cause of the damages to the appellees.

Our Supreme Court in Vestal v. Gulf Oil Co., 149 Tex. 487, 235 S.W.2d 440, 442, announced this rule: "The burden of proof with reference to showing that the use of the wholesale property was not reasonable remained on petitioners. It was an ultimate issue and the burden rested on the petitioners to plead and prove and secure a jury finding that the use of the wholesale property by the respondent was unreasonable." Also, it has been held that where a thing is not a nuisance per se but can become a nuisance only by reason of the negligent manner in which it is performed or permitted, no right of recovery is shown independently of the existence of negligence. See 31 Tex. Jur. p. 421.

In Gulf, Colorado & Santa Fe Ry. Co. v. Oakes, 94 Tex. 155, 58 S.W. 999, 1001, 52 L.R.A. 293, we find this statement: "Since the owner may use his land as he chooses, if he does not violate any law, and is not to be substantially deprived of its use or of the ordinary pursuit of his own interests, but, at the same time, is required in its use to avoid injury to another, it at once follows that he may be required to forego a particular use when it is not essential to the substantial enjoyment of his property, and is fraught with unreasonable loss to his neighbor. On the other hand, the particular use may be so important to the owner, and the loss or inconvenience to his

neighbor so light compared to his, were he forbidden to so employ his property, that it would be unreasonable and unjust to impose such a restriction. In such cases, it is evident that all of the circumstances of the situation must be taken into consideration. The importance of the use to the owner, as well as the extent of the damage to be inflicted upon his neighbor, and the rights of the parties, are to be adjusted in a practical way; the question being whether or not the proposed use is a reasonable one, under all the circumstances. * * * As is said in some of the authorities, there must, in such inquiries where rights and interests seem to conflict, be a balancing of them."

■ As we have heretofore stated, it was the duty of the appellees in the trial court to plead, prove and obtain a jury finding that the Limestone Products Company made an unreasonable use of its property, and having failed to carry this burden, they cannot here complain. See Rule 279, T.R.C.P. It follows that the court did not err in refusing to grant an injunction against the defendant Limestone Products Company.

■ We are of the further view that since the lime plant owned by the Limestone Products Company and operated by Texas Lime Company is a lawful, useful and necessary business, and that it does and has contributed to the welfare and prosperity of the community in which it is located, as well as to the health and welfare of the people of the State of Texas, in that useful and necessary products are being produced, that considering the time the plant was located and the conditions surrounding, and

all the facts and circumstances surrounding at the time of its location, that the granting of an injunction as requested by the appellees would be unjust, improper, inequitable and would result in an unbalancing of the equities in favor of a few individuals as against the public at large. See Storey v. Central Hide & Rendering Co., 148 Tex. 509, 226 S.W.2d 615 and authorities there cited. Also see Georg v. Animal Defense League, Tex.Civ.App., 231 S.W.2d 807 (N.R.E.); Angelina Hardwood Lbr. Co. v. Irwin, Tex.Civ.App., 276 S.W.2d 407; King v. Miller, Tex.Civ.App., 280 S.W.2d 331 (ref. n. r. e.); Gulf, C. & S. F. Ry. Co. v. Oakes, supra.

Accordingly, the judgment of the trial court in favor of Limestone Products Company is affirmed, the judgment denying the writ of injunction is affirmed, the judgment in favor of appellees in all other respects is reversed and remanded, and the trial court is directed to grant defendants' plea of misjoinder of parties and causes of action; and because we think such procedure will come nearer obtaining justice for each of the respective parties, each of the respective parties should be allowed to re-plead their respective alleged causes of action, but, in so doing, they should bear in mind our discussion of the appellant's special exceptions hereinbefore stated.

Accordingly, this cause is affirmed in part and in part reversed and remanded with instructions. The costs of this appeal shall be prorated equally against the twelve parties plaintiff.

HALE, J., took no part in the consideration and disposition of this case.