**Reverse and Remand and Opinion Filed July 12, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-01363-CV

### 4415 W LOVERS LANE, LLC, Appellant
### V.
### SAM STANTON AND HEATHER STANTON, Appellee

**On Appeal from the County Court at Law No. 1**
**Dallas County, Texas**
**Trial Court Cause No. CC-17-05704-A**

## MEMORANDUM OPINION
Before Justices Bridges, Myers, and Schenck
Opinion by Justice Bridges

4415 W Lovers Lane, LLC[1] appeals from the trial court's temporary restraining order prohibiting 4415 from, among other things, removing a large elm tree (the Tree) that sits on the property line between 4415's property and the property of Sam and Heather Stanton. In a single issue, 4415 argues the trial court abused its discretion in granting a temporary restraining order because the Stantons failed to meet their burden on all the required elements of injunctive relief, the order does not comply with rule of civil procedure 683, and the Stantons sought equitable relief with unclean hands. We reverse the trial court's order granting temporary injunctive relief, dissolve the temporary injunction, and remand the case to the trial court for further proceedings.

---

[1] The record shows the Stantons originally sued Bellomy Minerals, LLC. Ryan Bellomy testified he was one of the managers of 4415, and 4415 was the owner of the property next to the Stantons. For clarity, we refer to the defendant as "4415."

On October 26, 2017, the Stantons filed an application for temporary restraining order, temporary injunction, and permanent injunction in which they argued their property shares a property line next to 4415's property, and the Tree sits on the shared property line, with part of the trunk on the Stanton's property. The Stantons asserted they were in the final stages of constructing a residence on their property, and the design of their residence "was to include a large window to look out on to the large elm tree." The Stantons alleged 4415 recently began the process of building a commercial building with an underground parking garage on their property and, as part of the construction, removed several large trees on their property. On or about October 25, 2017, 4415's counsel informed the Stantons that their contractor would immediately begin removing the Tree. The Stantons informed 4415 that they did not consent to removal of the Tree, but 4415 began the process of removing the Tree by excessively trimming its branches. The Stantons alleged they arrived at the property in time to stop the contractor's work. The Stantons further alleged removal of the Tree "would diminish the current market and intrinsic value" of their property. Based on these allegations, the Stantons argued they were entitled to a temporary restraining order to preserve the status quo and prevent immediate and irreparable injury. The Stantons sought an order prohibiting 4415 from removing the Tree or further trimming or excavating the tree roots without the consultation of an arborist.

On October 27, 2017, the trial court signed an order restraining 4415 from removing the Tree and enjoining either party from excavating the Tree's roots without the consultation of an agreed upon arborist to determine if such actions would potentially affect the life and sustainability of the Tree. The order also set the matter for a hearing on the Stanton's application for a temporary injunction on November 2, 2017. On October 30, 2017, the trial court signed another Temporary Restraining Order containing the same prohibitions and trial setting.

On November 2, 2017, the trial court conducted a hearing at which Sam Stanton testified the construction on his property was "a week or two away from completion," but he was "undecided" whether he and his wife were going to live on the property. When his counsel asked him how much of the tree sits on his lot, Sam answered "a fair amount" and testified "it's a big piece. And not only is it the trunk, it covers half of our home, canopy wise, for shade. And, you know, the reason it's there is for privacy. Who knows what's going next door. We need that there." When shown a picture of the Tree, Sam agreed that a fifth of the Tree's twenty-six-inch diameter was on his property. Sam testified 4415 had recently cut down "a lot of branches." When asked about an arborist's report the parties had jointly paid for, Sam testified the report showed there was "some damage during construction," but "the tree has a long life ahead." When asked about purchasing a new tree of the same size, Sam testified the neutral arborist "said it would be about $15,000." Sam testified the Tree was part of the "whole theme and the whole reason of building the home," and a "big window" looked out at the Tree. On cross-examination, Sam confirmed his testimony that the canopy of the Tree "covers half" of his home. However, when shown Defendant's Exhibit 3, a picture of the Tree, and asked whether it was a true and accurate depiction of the Tree, he responded, "Well, no. It's all been completely chopped off on one side. But . . . if you stood back a little bit further, you would see how it does cover more of the home like the surveyor's drawing." 4415's counsel asked Sam to read the following portion of the arborist's report: "The loss of the major roots on the north side are serious concerns that heighten the risk of loss and must be considered when determining preference for preservation or removal."

Sam confirmed that his property was on the north side to which the report referred. Sam confirmed that, during construction of his residence at the property, excavation for his foundation and excavation for the electrical service, AC service, and drainage were conducted within five feet

two inches of the tree. In response to questioning, Sam testified he was "sure there was some damage caused by construction."

Ryan Bellomy, one of 4415's managers, testified the Stanton's construction, excavation, and compaction harmed the health and structural integrity of the Tree which put "anybody that would be on the property at risk of the tree falling, injuring them, killing them." Bellomy testified he did not think the risk could be eliminated without removing the Tree. Bellomy testified that, due to the temporary restraining order, his excavation crew charged $3000 to stop work and he had to pay $1300 for an additional survey and $250 for an arborist report. In addition, the general contractor incurred $6800 in administrative expenses per month. Bellomy testified 4415 hired a licensed landscape architect design a plan which was approved by the city of Dallas. The plan called for fifty-three new trees on the property including ten trees in between 4415's and the Stanton's property. In response to questioning from 4415's counsel, Bellomy read the following portion of the arborist's report:

The loss of the roots relatively close to the tree, as is the case with the assessed tree, can also reduce structural integrity and in the case of partial or whole tree failure, could lead to property damage and/or personal injury. Each tree owner must determine his/her own tolerance to risk, however.

On November 7, 2017, the trial court signed an order granting the Stanton's application for temporary injunction. The order contained the trial court's findings that the Stantons (a) have shown a probable injury and a probable right to relief regarding the tree and (b) have suffered and will suffer imminent and irreparable harm if [4415] cuts down the tree and no remedy at law can adequately address [the Stanton's] harm. The order enjoined 4415 from (1) removing the large elm tree that sits on the shared property line and (2) further trimming or excavating the tree roots of the large elm tree. The order also required the Stantons to post a $15,000 bond. On November

–4–

17, 2017, the trial court signed an amended order containing the same findings and prohibitions. The amended order set the case for trial on November 13, 2018. This appeal followed.

In a single issue, 4415 argues the trial court abused its discretion in granting a temporary restraining order because the Stantons failed to meet their burden on all the required elements of injunctive relief, the order does not comply with rule of civil procedure 683, and the Stantons sought equitable relief with unclean hands.

The purpose of a temporary injunction is to preserve the status quo of the subject matter of a suit pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A party asking for a temporary injunction seeks extraordinary equitable relief. *Wilson N. Jones Mem'l Hosp. v. Huff*, 188 S.W.3d 215, 218 (Tex. App.—Dallas 2003, pet. denied). The extraordinary equitable remedy of an injunction must be carefully regulated and confined to proper cases. *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 743 (Tex. App.—Dallas 2011, no pet.). The decision to grant or deny a temporary injunction lies in the sound discretion of the trial court, and the court's grant or denial is subject to reversal only for a clear abuse of that discretion. *Butnaru*, 84 S.W.3d at 204; *Huff*, 188 S.W.3d at 218.

To be entitled to a temporary injunction, an applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204. "Probable injury" includes the elements of imminent harm, irreparable injury, and no adequate remedy at law. *El Tacaso*, 356 S.W.3d at 743. For purposes of a temporary injunction, an injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204; *Huff*, 188 S.W.3d at 218. In relevant part, rule of civil procedure 683 requires every order granting a temporary injunction to state the reasons for its issuance, be specific in terms, and describe in

reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained. TEX. R. CIV. P. 683; *El Tacaso*, 356 S.W.3d at 744. A trial court's order stating its reasons for granting a temporary injunction must be specific and legally sufficient on its face and not merely conclusory. *See* TEX. R. CIV. P. 683; *El Tacaso*, 356 S.W.3d at 744. To comply with rule 683, a trial court must set out in the temporary injunction order the reasons the court deems it proper to issue the injunction, including the reasons why the applicant will suffer injury if the injunctive relief is not ordered. *El Tacaso*, 356 S.W.3d at 744.

The requirements of rule of civil procedure 683 are mandatory and must be strictly followed. *Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000) (per curiam); *El Tacaso*, 356 S.W.3d at 744. If a temporary injunction order fails to comply with the mandatory requirements of rule of civil procedure 683, it is void. *Qwest Commc'ns Corp.*, 24 S.W.3d at 337; *El Tacaso*, 356 S.W.3d at 744.

Here, the trial court's amended order granting a temporary injunction contained the trial court's findings that the Stantons (a) have shown a probable injury and a probable right to relief regarding the tree and (b) have suffered and will suffer imminent and irreparable harm if [4415] cuts down the tree and no remedy at law can adequately address [the Stanton's] harm. The order enjoined 4415 from (1) removing the large elm tree that sits on the shared property line and (2) further trimming or excavating the tree roots of the large elm tree. The trial court's order does not state or explain the probable, imminent, and irreparable harm the Stantons will suffer absent an injunction. *El Tacaso*, 356 S.W.3d at 747. The trial court's temporary injunction order simply recites the conclusory statement that the Stantons have shown that they will suffer an irreparable injury for which they have no other adequate legal remedy. *See id.* That conclusory statement does not satisfy the rule 683 requirement that a temporary injunction order specify the reasons why

the applicant will suffer irreparable harm for which there is no adequate remedy at law. *See id.* We therefore conclude the trial court's order is void. *See id.*

Further, the Stantons have not proved a probable right to the relief sought. *See Butnaru*, 84 S.W.3d at 204. An injunction plaintiff need not establish the correctness of his claim to obtain temporary relief, but must show only a likelihood of success on the merits. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 686 (Tex. 1990). The record shows approximately five inches of the Tree's twenty-six-inch diameter is on the Stanton's property. A photograph entered into evidence shows that the Tree's trunk leans toward 4415's property such that, if all of the Tree on 4415's property were removed, a sliver of wood approximately five inches wide and about a foot tall would be left on the Stanton's property.



The Stantons, in their brief, argue 4415 admits the Stantons have an ownership interest in the Tree. On the contrary, 4415 argues that ownership is not shared with an adjacent property owner just because a tree grows across a boundary line. Instead, 4415 argues, this becomes an "invasion" of the adjacent property owner's right of possession. *See Gulf, C. & S.F. Ry. Co. v. Oakes*, 94 Tex. 155, 160–61, 58 S.W. 999, 1001 (1900) ("a tree and all its roots and branches

belong to the owner of the soil upon which its trunk stands, and, when its roots and branches extend upon the land of another, there is a direct invasion by the owner of the tree of the possession of such land, and a use of it to maintain his property, which is a violation of the absolute right of the adjacent owner to the exclusive possession and use of it."); *see also Love v. Klosky*, 413 P.3d 1267, 1272 (Colo. 2108) (defining encroachment trees as trees that start life on one property and grow onto a neighboring property and holding tree does not automatically become a boundary-line tree, and thus joint property, merely by touching a property line). We agree. Accordingly, we sustain 4415's single issue.

We reverse the trial court's order granting temporary injunctive relief, dissolve the temporary injunction, and remand the case to the trial court for further proceedings.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

171363F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

4415 W LOVERS LANE, LLC, Appellant

No. 05-17-01363-CV     V.

SAM STANTON AND HEATHER
STANTON, Appellees

On Appeal from the County Court at Law
No. 1, Dallas County, Texas
Trial Court Cause No. CC-17-05704-A.
Opinion delivered by Justice Bridges.
Justices Myers and Schenck participating.

In accordance with this Court's opinion of this date, the trial court's order granting temporary injunctive relief is **REVERSED**, the temporary injunction is **DISSOLVED**, and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant 4415 W LOVERS LANE, LLC recover its costs of this appeal from appellees SAM STANTON AND HEATHER STANTON.

Judgment entered July 12, 2018.

–9–